## McCutchen *v.* Ochmig.

1. **WILL.** *Holographic. Deposit for safe-keeping.* J. R. Sharp, while at Aberdeen, Mississippi, in 1861, as a Confederate soldier from Tennessee, wrote the instrument in question as a letter, beginning it simply with the expression of " Dear cousin," and in it appears the following: " Write to my creditors soon, each one separately. Their names are on the heads of the accounts. Tell them you will pay them as soon as you can. I want to pay all of my debts, if possible. My love to all. I expect to get killed in the first fight, so please pay all my debts for me, and if any thing is left after I am dead, it is yours. You may have it. Tell these men down here that I have got plenty, if I could get it collected. Good-bye. We leave at 2 o'clock this evening for battle. Tell sister good-bye for me." This letter was presented for probation by G. M. McCutchen, who produced with it an envelope addressed to himself, stating that the letter came to him in it. The hand-writing was sufficiently proven, both on the envelope and in the letter.

McCutchen *v.* Ochmig.

*Held,* It does not sufficiently appear in the proof that the script in question was lodged with the plaintiff by the deceased, for safe-keeping as his will.

2. SAME. *Evidence. Connection between envelope and letter.* Connection must be shown between the envelope and letter by affirmative evidence on the trial.

Cases cited: 10 N. & C., 706, 707; 1 Yerg., 407; Outlaw *v.* Hurdle, 1 Jones N. & C. R., 150; St. John's Lodge *v.* Callender, 4 Ired. R., 335; 11 Hum., 377, 465; 2 Head, 303; 5 Cold., 129.

Acts cited: Act of 27, Henry VIII.; Act of 1784, ch. 22, § 11; Act of April and October, 1784, ch. 22, § 10.

Code cited: § 2,163.

3. SAME. *Domicile of testator. Jurisdiction of Courts.*

*Arguendo,* If the testator's domicile was not in this State at the time of his death, whether the Courts of Tennessee would have jurisdiction to probate the will, is very questionable.

Code cited: §§ 2,169, 2,182, *et seq.*

---

## FROM FRANKLIN.

---

Appeal from the Circuit Court. N. A. PATTERSON, Judge.

T. B. MURRAY for McCutchen.

A. S. MARKS for Ochmig.

SNEED, J., delivered the opinion of the Court.

This case presents an issue *devisavit vel non,* upon a script propounded as the holographic will of James R. Sharp, deceased. The plaintiff offered the paper for probate in the County Court of Franklin County. Whereupon objection was made by one of the heirs at law, and the matter was certified to the Circuit Court for an issue *devisavit vel non,* which upon trial resulted in a verdict and judgment establishing the

script as the last will and testament of the said James R. Sharp, deceased. The contestant appeals in error.

The testator was a young man who had just reached his majority when he entered the Confederate army in the spring of 1861. He had been a resident of Franklin County prior to 1860, and at the time of his death he owned an interest in certain real estate in said county, and an interest also in certain *choses in action* in the possession of his agent or attorney in said county.

In 1860 he went to Aberdeen, Mississippi, and was there on the 30th of April, 1861, when it is alleged he wrote the following letter to the plaintiff, as his last will and testament:

"ABERDEEN, MISS., April 30, 1865.

"*Dear Cousin:* I received your letter two or three days ago, and was very glad to hear from you. I hope that you will soon be united with us in the defence of your country. Our company leaves to-day for Corinth, Mississippi—there will wait for further orders. With enclosed please find my accounts in the town of Aberdeen for the last two years. It is a good . . . but don't say anything about it to any one. I am ashamed to let you see them. Don't let any one see them at all. Please pay them as soon as you can. Write to each one about it as soon as you get this, and give them some encouragement. For I am going to fight to-day, and they

do not know any thing about me, although they have confidence in me, and I don't want them to lose it. Write to them, please, soon, each one separate. Their names are on the heads of the accounts. Tell them you will pay them as soon as you can. I want to pay all my debts, if possible. My love to all. I expect to get killed in the first fight. So please pay all my debts for me, and if any thing is left after I am dead, it is yours. You may have it. Tell these men down here that I have got plenty, if I could only get it collected. Good-bye. We leave at 2 o'clock this evening, for battle. Tell sister good-bye for me, and every one. I would like for you to send me fifty dollars, if you can, to Corinth. We will stay there a week or more. Yours,

"J. R. SHARP."

The name of the correspondent to whom this letter was addressed does not appear upon it, but when shown to the witnesses with a view to prove the hand-writing of the writer, it was produced with an envelope addressed to G. N. McCutchen, the plaintiff, and it was shown by a number of witnesses that the superscription upon the envelope and the letter were in the hand-writing of Sharp, but the connection between this envelope and the letter, or the fact that this particular letter had been actually transmitted in said envelope to the plaintiff does not appear in the proof. Upon this point it seems no testimony whatever was adduced, and it seems to

have been left to the inference of the jury to con-
nect the envelope with the letter. The eight or ten
witnesses examined to prove the hand-writing are very
clear in their testimony that the letter and envelope
were written by Sharp, but only one or two of them
state that said hand-writing was generally known among
the acquaintances of Sharp. Our statute upon the sub-
ject of holographic wills is in the words following:
After prescribing the forms and solemnities necessary
in the execution of an attested will, the statute pro-
ceeds as follows: "But a paper writing, appearing to
be the will of a deceased person, written by him,
having his name subscribed to it, or inserted in some
part of it, and found after his death among his valu-
able papers, or lodged in the hands of another for
safe-keeping, shall be good and sufficient to give and
convey lands, if the hand-writing is generally known
by his acquaintances; and it is proved by at least three
creditable witnesses that they verily believe the writing
and every part of it to be in his hand. Code, §2,163.
The original statute from which the provision was
brought into the Code was enacted in 1784, and was
an innovation upon the prior statute of the same year,
which regulated the disposition of land by last will
and testament. The power to dispose of personalty by
will is of immemorial existence at common law, and
it is frequently said that no act requires less of cere-
mony and formality. But the power to devise lands
was of statutory origin, and only existed in England
after the Act of 27 Hen. VIII., and the reason was

that land could not be transferred without the consent of the king or the superior lord, and a fee was paid for his consent to such alienation. The will, moreover, could not be known until after the testator's death, and, possibly, the devisee was the mortal enemy of the feudal lord, who could not permit such a tenant to be imposed upon him. And instances are given in the ancient books of the authority to make a will, being conferred upon particular persons by the king. · Thus Edward III. gave such a power to his son, the Black Prince. The Act of April, 1784, ch. 22, § 11, regulating and prescribing the forms and ceremonies necessary to a devise of lands, recites that such an act should be "the most solemn and best considered of a man's life," and provides that "no last will and testament shall be good or sufficient, either in law or equity, to convey or give any estate in lands, tenements or hereditaments, unless such last will shall have been written in the testator's life-time and signed by him, or some other person in his presence and by his direction, and subscribed in his presence two witnesses at least, no one of which shall be interested in the devise of the said land." There were, however, particular cases not reached by this statute, and which, on account of the ceremony and solemn deliberation with which such wills were prepared, were deemed sufficient for the devise of the lands, and these were provided for by a subsequent statute of the same year, enacted in October thereafter. Vid. Acts, April and October, 1784, ch. 22; 10 C. & N., 706, 707

The preamble to the latter Act recites that the attestation of witnesses to wills and testaments required by the Act of April, 1784, ch. 22, is intended to prevent frauds and impositions by the will of persons hastily drawn up in their last sickness, and from their want of sufficient knowledge for that purpose, and it may be proper to make exceptions from that rule in particular cases; then follows the provision already cited for holographic wills, only differing from the provisons already cited from the Code in this, that the original Act refers to "*any will* that shall be found among the valuable papers of the deceased or lodged in the hands of any person for safe-keeping," and the Code refers to "any paper writing *appearing to be the will* of the deceased, so found or so lodged as aforesaid, for safe-keeping. It will be observed that this latter act involves a material departure from the original provision for the devise of real estate, but that it is hedged and guarded in a manner to show that no serious departure was intended from the solemn sanctions and evidences of the *animus testandi* prescribed in the original statute, and this Court had occasion to announce at an early day, that any construction tending to weaken the force of the provisions for the due and solemn execution of last wills as prescribed in the statutes, is inadmissible." 1 Yerg., 407. It is no objection to the script in question as a will, that it is written in the shape of a letter, if it have the other requisites of a holographic will. What are these requisites, as applied to the case in judgment? It must appear to be a

will, and this requisite may be supplied by any words that unequivocally show that the writer intended it as a posthumous disposition of his estate, both real and personal, or that he intended by it to dispose of his personalty alone. For it is a question of intention at last, and the Court and jury are to determine whether it be a will as to both species of property, or a will as to either. But the first and paramount question is, whether it be a will at all under the statute. And first, it must appear that it was written by the deceased, and his name subscribed by him to it, or inserted in some part of it, and the hand-writing must be generally known among his acquaintances, and it must be proved by at least three creditable witnesses that they verily believe the writing, and every part of it, to be his. In the case of *Outlaw* v. *Hurdle,* 1 Jones (N. & C.) R., 150, it was held under a like statute, that to entitle a holographic will to probate, the hand-writing of the deceased should be so generally known as to preclude the attempt to establish a fabricated will. That it is " generally known may be inferred from its being testified to by a large number of witnesses. 1 Jones R., 150. Although we may suppose a. case in which such a paper may be lodged with some person for safe-keeping as a will, or found among his valuable papers after death, and yet his hand-writing be utterly unknown to any of his acquaintances, yet we can scarcely see how this very important provision of the statute can be dispensed with. But it must be lodged in the hands of . another for safe-keeping. These words, as

used in the statute, are of strong significance. The statute is providing for such cases of a devise of lands as lack the attention of witnesses, and substitutes the several requirements therefor, neither of which can be dispensed with. There must be a depository for the paper writing, and it must be so lodged and deposited as a will, and for safe-keeping as such, and of this deposit and lodgment there must be affirmative and positive proof. No mere inference or conjecture of the intention of the writer in such case can answer the requirements of the statute. Thus it was held that there must be affirmative and direct proof that the paper was deposited with some one *as a will.* *St. John's Lodge* v. *Callender,* 4 Ired. R., 335. All the requisites of the statutes must concur, and it must appear that the writer, in lodging the paper with another, had in view its preservation as a will. 11 Hum., 377; Id. 465; 2 Head, 302; 5 Cold., 129. The mere writing of a letter to another, containing testamentary provisions, without affirmative and direct proof that the writer intended to lodge it with his correspondent as a will and for safe-keeping, would not answer the demand of the statute. In the language of this Court already cited, "all the requisites of the statute must concur." We are of opinion that it does not sufficiently appear in the proof that the script in question was lodged with the plaintiff by the deceased for safe-keeping as his will, and that the Court erred in withholding from the jury the instructions asked for by the defendant, that the connection must be shown by affirmative evi-

dence between the letter and the envelope produced upon the trial. We have considered the case however, upon the hypothesis that the deceased had not lost his domicil in Franklin County by his temporary abode in the State of Mississippi. The proof is not clear upon this point, and if it were made to appear that the domicil was not in this. State at the time of the death of the party, the aspect of the case might be materially changed upon the question of the jurisdiction of our Courts for the probate under any circumstances. Vid. Code §§ 2,169, 2,182 *et seq.*

Reverse the judgment and award a new trial.