# Franklin *v.* Franklin.

## (*Nashville.* February 26, 1891.)

1. WILLS. *Devisavit vel non.* *Quantum of proof of wills of personalty.*

An unattested paper which purports to be a testament, may be admitted to probate without other proof of its writing or publication than the testimony of two witnesses showing the body and signature of the instrument to be in the handwriting of the testator therein named.

Cases cited and approved: Johnson *v.* Fry, 1 Cold., 102; Suggett *v.* Kitchell, 6 Yer., 427.

2. SAME. *Same.* *Legatee competent to testify.*

Upon trial of the issue of *devisavit vel non* the proponent, being also a legatee under the will, is competent to testify in his own behalf.

3. EVIDENCE. *Cross-examination.* *Collateral matters.*

As to purely collateral matters which are not admissible as independent proof, the answers of a witness, responsive to questions on cross-examination, are conclusive and not open to contradiction.

4. SAME. *Same.* *What matters are collateral.*

The cross-examination relates to collateral matters, and the witness' answers are conclusive where, upon trial of the issue of *devisavit vel non*, the legatee and proponent, who is accused of the forgery of the will, testifies in his own behalf, and is interrogated, on cross-examination, in regard to other specific and independent forgeries, the commission of which he denies. Evidence to contradict his denial is inadmissible.

5. SAME. *Same.* *Same.*

So, likewise, the answers of witness on cross-examination are conclusive, and not open to contradiction where he replies in the negative to the

question whether "he had not the habit of using morphine and whisky to excess." It is not competent to prove by way of contradiction, or for any purpose, that he had used "these things to such excess as to impair his mind and affect his moral character."

6. SAME.  *Of independent crimes.*

Upon trial of the issue of *devisavit vel non*, it is not competent to show, in support of the charge that the proponent and legatee had forged the will, that he had committed other independent forgeries.

7. SAME.  *Handwriting, proof, and comparison of.*

Where, upon the trial of the issue of *devisavit vel non*, the proponent and sole legatee is charged with forgery of the will propounded, it is not competent to introduce other writings of the party accused of the forgery, though admitted or proved to be genuine, if they are offered for no other purpose than to enable the witnesses or jury to compare them with the handwriting of the will, and draw an inference as to its forgery. Such writings were not admissible prior to Act of 1889, and are not made so by that Act.

Act construed: Acts 1889, Ch. 22.

Cases cited and approved: Clark *v.* Rhodes, 2 Heis., 207; Wright *v.* Hessey, 3 Bax., 45.

---

FROM SUMNER.

---

Appeal in error from Circuit Court of Sumner County.  A. H. MUNFORD, J.

J. J. TURNER, S. F. WILSON, and B. D. BELL for J. W. Franklin.

C. R. HEAD, T. C. MULLIGAN, J. W. BLACKMAN, and R. K. GILLESPIE for Ed W. Franklin.

LURTON, J.  This is an issue of *devisavit vel non* The will in contest is one purporting to have been

executed in October, 1871, by J. A. Franklin. The testator died in November, 1871, and the paper sought to be probated was produced in 1885 by the defendant, Ed W. Franklin, who claims to have then discovered it in an old gun-box which had belonged to the testator. The discoverer and propounder of the will is the brother of the testator and the beneficiary thereunder. It is unattested. Though claimed to be wholly in the handwriting of the testator, it is not insisted that it is good as a will of realty, because unattested and not found among the valuable papers of the testator. It is offered for probate as a common law will of personalty alone. The probate is resisted by J. W. Franklin, the father of both J. A. and Ed W. Franklin. There was a verdict for the will. Errors have been assigned upon the charge of the Court, and upon the rulings in admission and rejection of evidence. It is also assigned as error that the verdict is unsupported by evidence sufficient in law to set up the paper as a will of personalty. There are no subscribing witnesses to the will, and there is no evidence that the testator ever acknowledged the paper as his will or that he ever claimed to have made a will. The evidence upon which it is sought to set the writing up as a will, consists of proof that the entire paper is in the handwriting of the testator, and that it, on its face, purports to be the last will and testament of the writer of the paper, and is signed by him.

If such evidence is sufficient without other proof

of the execution, then there is abundant evidence, under the rule of this Court, to support the finding of the jury. Our statute of wills does not regulate the making ·of wills of personalty; but it is well settled in this State that, without regard to the statute, two witnesses to the factum of the will are necessary to the probate of such a will. This was the rule of the civil law, and hence the rule in the ecclesiastical courts of England. This rule of the civil law did not apply exclusively to wills, for under that jurisprudence every fact was required to be established by two witnesses or circumstances equivalent to two. It has never been ruled that such witnesses should be subscribing witnesses, nor witnesses to the execution of the paper. "It is enough," said this Court in *Johnson* v. *Fry*, "that the proof made by two should be equivalent to that." 1 Cold., 102.

If the paper purport to be a testament, and the body of the will be shown by two witnesses to be in the handwriting of the testator, such will is sufficiently proven as a will of personalty, though there be no other proof of its writing or publication. As to wills of chattels, Blackstone says: "As to written wills, they need not any witness of their publication. I speak not here of devises of lands, which are entirely another thing, a conveyance by statute, unknown to feudal or common law, and not under the same jurisdiction as personal testaments. But a testament of chattels, written in the testator's own hand, though it

has neither his name nor seal to it, nor witnesses present at its publication, is good, provided sufficient proof can be had that it is in his handwriting." 2 Black. Com., 501.

So, in the early case of *Suggett* v. *Kitchell*, Judge Green said: "It is not always required that the proof shall be by subscribing witnesses; as, if the will be written in the testator's own hand, although it is not signed by him nor attested by subscribing witnesses, it is good, provided his handwriting be sufficiently proven. This proof must, in general, be by two witnesses." 6 Yer., 427.

There was no error of which appellant can complain in the charge of the Court as to the quantity or quality of evidence necessary to prove such a will; and the assignment of error touching this question, and that concerning the sufficiency of the evidence to support the verdict, must be overruled.

It was not error to admit the evidence of Ed W. Franklin. He was not a subscribing witness, and therefore not excluded by our statute of wills. That he was interested, went to his credit; it did not render him incompetent.

The appellant sought to defeat this will by showing that it was a forgery, perpetrated by the beneficiary and propounder. On cross-examination, Dr. Franklin was asked if theretofore he had not forged the name of his father-in-law, the late Daniel Hillman; and if he had not forged the

signature of Dr. Carr, and of his wife. He answered that he had not. It was then proposed to prove that, in fact, he had been guilty of the various forgeries he had denied. Upon objection, all such evidence was excluded. There was no error in this.

The fact of forgery of a particular paper cannot be shown by proof of other crimes of the same kind. If it had been shown that he had written this will, and the defense was that it was written innocently or by direction of the testator, then, to show guilty purpose or motive, it might have been admissible to show other offenses of the same kind. That was not the question here. That this paper had been written by Ed Franklin had neither been admitted or proven. It was not competent to prove that he had *written* this will by proof that he had forged other papers. The motive of the witness was not involved. The evidence was of course incompetent for the purpose of contradicting him. The questions propounded were as to matters collateral, and the appellant was bound by his answers, unless he was entitled to the evidence subsequently offered as independent proof.

The same witness was on cross-examination asked if he had not the habit of using morphine and whisky to excess. This he denied. It was then sought to show that he had both of these vices, and that he had carried the use of these things to such excess as to impair his mind and affect his moral character, thus rendering him capable of

4—6 P

perpetrating crimes which in a normal state he would have avoided. This evidence was properly rejected. If in his defense of a criminal charge it had been sought to show that he was criminally irresponsible, such proof might have been admissible. But when offered as tending to show him capable of committing a forgery, it was wholly inadmissible. If offered by way of attacking his veracity, it was equally incompetent.

Appellant assigns error upon the ruling of the Court that expert witnesses could not compare letters written by the proponent of the will, and admitted to be genuine, with the disputed will, and say from such comparison whether or not the writer of such letters was not the writer of the will. There was no error in this. Comparison of handwriting by experts was at common law inadmissible.

Upon a former trial of this case we held that it was not error to exclude opinions of experts based upon a comparison of the disputed will with genuine signatures and letters of J. A. Franklin.

In at least two cases reported this Court had previously ruled that writings other than the one in dispute could not be introduced in evidence for the purpose of comparison by witnesses or jury. *Clark* v. *Rhodes*, 2 Heis., 207; *Wright* v. *Hessey*, 3 Bax., 45.

It is, however, insisted that the Act of February 26, 1889, is subsequent to these decisions, and the rule thereby changed. That Act is in these words:

"That hereafter in all the Courts of this State comparison of disputed writings or signatures with any writings or signatures proved to the satisfaction of the Judge to be genuine, shall be permitted to be made by expert witnesses; and such writings or signatures, and the evidence of expert witnesses respecting the same, shall be submitted to the Court or jury as evidence of the genuineness or otherwise of the writing or signature in dispute."

This Act opens the door to the admission of a class of evidence of very slight value. It is in derogation of common law, and should be strictly construed. It does, without doubt, authorize a comparison of the disputed writing with the genuine signatures or writings of the reputed writer of the disputed paper. This comparison was, upon the trial of this case, allowed to be made. It does not, however, authorize such comparison to be made with writings introduced for that purpose as the genuine writings of any person other than the reputed writer of the disputed paper. The writings with which the disputed paper may be compared are the genuine writings of J. A. Franklin, and not writings by any other person. In the case of *Fogg* v. *Dennis*, 3 Hum., 47, it was held that it was not even competent to submit to a witness who had testified to the genuineness of a signature, other signatures of the same person for the purpose of testing his knowledge. This ruling was placed upon the ground that such method of testing the witness would lead to innumerable collateral exami-

nations, and to the unutterable confusion of the jury.

So the evidence offered here would result in as many side-issues as counsel chose to initiate, and at last amount to little in ascertaining the truth. We think the comparison should be confined to the disputed writing and other signatures or writings by the reputed writer of the disputed paper. The Act of 1889 is almost a literal copy of the New York Act of 1880 on the same subject. That Act has been construed as providing only "for the admission of papers proved to be signed by the person whose signature is denied, and that it did not authorize admission of writings, though duly proved, made by the person alleged to have forged the disputed paper. *Peck* v. *Callaghan,* 95 N. Y., 73.

The other assignments of error have been examined. They present no material error.

Affirm the judgment with costs.