DIETZ *et al. v.* GALLAHER *et al.*

(*Nashville,* December Term, 1935.)

Opinion filed December 16, 1935.

MARTIN L. GUTHRIE and HORACE M. CARR, both of Harriman, and R. H. WARD, of Kingston, for plaintiffs in error.

D. O. HARRIS, of Harriman, WM. B. LADD, of Kingston, and STEINMETZ, LOWE & WIMBERLY, of Knoxville, for defendants in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Mrs. Julia R. Watkins, a resident of Kingston, died at that place on December 27, 1931, leaving personal estate and real estate.

After her death a will duly executed by her and witnessed was found in the vault of a Kingston bank where she had deposited it for safekeeping along with a bundle of securities that she owned. This will was dated August 10, 1929, and was admitted to probate in the county court of Roane county in April, 1932. In the fall of 1932, a paper writing was offered for probate in the county court of Roane county purporting to be a later will of Mrs. Watkins, dated November 8, 1930. The probate of

this instrument was resisted and an issue of *devisavit vel non* made up.

In the circuit court it was admitted by all parties that the will dated August 10, 1929, was duly executed and witnessed and was entitled to probate. It was also admitted by the proponents of the paper writing dated November 8, 1930, that it was not good as a will of real estate because it was neither signed by Mrs. Watkins nor witnessed. It was insisted, however, that this paper of later date was good as a will of personalty, and operated as a revocation of the disposition of the personal property of Mrs. Watkins contained in the will of August 10, 1929.

The jury found in favor of the unsigned paper, that it was the will of Mrs. Watkins, and the result in the circuit court was that the will of August 10, 1929, was set up as a valid disposition of the real estate of testatrix, and the will of November 8, 1930, was set up as a valid disposition of the personal property of testatrix.

The Court of Appeals affirmed the judgment of the circuit court, and this court granted a petition for *certiorari,* and the case has been fully argued here. We are forced to a conclusion contrary to that reached by the lower courts, and are of opinion that the unsigned paper writing of date November 8, 1930, is not entitled to probate as the will of Mrs. Watkins.

As above stated, the will of August 10, 1929, was signed by Mrs. Watkins and attested by two witnesses, both of whom appeared as witnesses. It appeared that everything attending the execution of this will was regular, and the proof showed that about a month before her death this will was carried to the bank in Kingston by Mrs. Watkins, bundled up with some $18,000 of bonds,

and placed by the cashier of the bank in the vault. By this will testatrix gave to her brother, Charles N. Martin, $1,000; to her niece, Mrs. Reese Gallaher, a piano, mirror, and portrait of the grandmother of testatrix; and also gave to Mrs. Gallaher the home of testatrix in Kingston for life with remainder to the daughter of Mrs. Gallaher; likewise all the household goods were given to Mrs. Gallaher; the rest of the property of testatrix, "including bonds and real estate," was bequeathed "to Evangeline Booth or the head of the Salvation Army in the United States at the time of my death." D. H. Evans of Kingston was nominated as executor.

The paper writing bearing date November 8, 1930, is as follows:

"I, Mrs. Julia R. Watkins, of Roane County, Tenn.
"Pay debts.

"I do not owe any debts.

"I give and bequeath to my brother Charles N. Martin of Kingston, Tenn., the sum of One Thousand Dollars.

"Should my brother or any of his family set up any claim against my estate for any indebtedness which he may allege to be owing to him by me—then said request to become null & void.

"I bequeath to my niece Mrs. Reese Gallaher of Wheat, Tenn., my piano.

"I give & bequeath to Mrs. Reese Gallaher the mirror which was my husband's property & which he gave me.

"I give, devise & bequeath all the balance of my estate including my house & lot in Kingston which is my present home, including the furnishings contained therein to Mrs. Reese Gallaher.

"D. H. Evans of Kingston, Tenn., & excuse him from bond.

"This Nov. 8th—1930.
"Witness

"SMITH RAYBURN.

"MRS. JESSIE RAYBURN.

"I give to Reese the piano and mirror which was my husbands & which he gave to me.

"The piano and mirror and grandmother's portrait to be placed over the piano."

About the only material difference between the two paper writings is that under the first the Salvation Army will get the $18,000 of bonds and any other securities and any real estate other than her home that Mrs. Watkins owned at the time of her death. Under the paper writing of later date, all this goes to Mrs. Reese Gallaher.

Mrs. Gallaher testified that she had been informed that her aunt had made a will later than that of August 10, 1929; that after her aunt's death she (Mrs. Gallaher) made a search of the aunt's effects for such a will, but without success. Mrs. Gallaher said that some months after the will of August 10, 1929, had been probated, she was making a second inspection of a trunk that had belonged to her aunt, and that in this trunk along with some old deeds and tax receipts she found the paper heretofore quoted and dated November 8, 1930.

It will be observed that while this paper was not signed by Mrs. Watkins, Smith Rayburn and Mrs. Jessie Rayburn appear to be subscribing witnesses thereto. Smith Rayburn said that he dated the paper, "This Nov. 8th—1930," before he witnessed it.

It appears that Rayburn was an employee of Mrs. Gallaher's husband. He lived about two and one-half miles from Kingston. Mrs. Watkins lived in town. Rayburn testified that on November 8, 1930, Mrs. Watkins

walked out to his place; that he was at the barn, and Mrs. Watkins produced the paper in question, told him (Rayburn) that it was her will, and that she wanted him to witness it. Rayburn said that he went from the barn to the house with her; that preparatory to affixing his name as witness he started to open the paper, but Mrs. Watkins told him she did not want him to see what was in it. He said she folded the paper so that he could not see its contents, or whether it was signed, and that he then signed his name at the bottom as a witness and wrote in the date as aforesaid.

Mrs. Jessie Rayburn, Smith Rayburn's wife testified that her husband came to the house with Mrs. Watkins, that Mrs. Watkins asked her (Mrs. Rayburn) to witness the will also, Mrs. Watkins stating that it was her will, and Mrs. Rayburn said that she then signed her own name as a witness under the name of her husband. Mrs. Rayburn likewise testified that the paper was folded when she signed it, that she did not know whether Mrs. Watkins had signed it, and indeed did not know whether the paper had any writing on it at all.

██ ██ The Tennessee law with reference to the probate of wills of personal property has been stated by this court as follows:

"Our Statute of Wills [section 8089 et seq., Code 1932] has given no exact directions, in relation to the attestation of Wills of personalty, as it has done in cases of realty; but, that it requires two witnesses to establish a Will of personal property, is a settled rule in this State. *Moore* v. *Steele*, 10 Humph., 562, and cases before and since. They need not be subscribing witnesses, as in case of realty. Nor is it necessary that two witnesses should

prove the fact of the execution of the paper. It is enough, that the proof made by two, or more, is equivalent to that." *Johnson* v. *Fry*, 1 Cold. (41 Tenn.), 101.

Decisions of this court hereafter cited also establish that it is not necessary that a will of personalty be signed by the testator. The latter proposition, however, is subject to this qualification that before an unsigned will of personalty is entitled to probate it must be proved to be according to the instructions of testator and approved by testator. Under such circumstances, an unsigned will will be held a good testament of personal estate. Sizer's Prichard's Law of Wills, Sec. 208, paraphrasing 2 Black. Com., 502.

It may be noted that if a will of personalty is all in the handwriting of the testator, and the handwriting be sufficiently proven, the will is good. *Franklin* v. *Franklin*, 90 Tenn., 44, 16 S. W., 557. Indeed, such a will having testator's name subscribed or inserted and found among his valuable papers or lodged with another for safekeeping is good as to land if the handwriting be proven by three witnesses. Code, Sec. 8090.

If, however, the paper writing offered as a will is unsigned, not in the handwriting of testator, there must be proof from two witnesses that the paper was written according to the instructions of the testator and approved by him to make the instrument a good will of personal property.

In *Suggett* v. *Kitchell*, 6 Yerg. (14 Tenn.), 425, one witness said that he wrote the will according to testator's directions. Another witness said that testator formerly told him he intended to dispose of his property in this

way. This proof was held insufficient to set up the paper writing as a will. It is to be observed that the second witness did not say that testator approved the paper after it was drawn.

In *Moore* v. *Steele,* 10 Humph. (29 Tenn.), 562, one witness testified that he wrote the will according to testatrix's instructions. No other witness testified that the paper was written according to the instructions of testatrix, or that the paper was approved by testatrix, and the probate of the instrument was denied.

In *Johnson* v. *Fry,* 1 Cold. (41 Tenn.), 101, one witness testified that he wrote the will according to the directions of the testator. There was no corroboration of this testimony, however, or any proof that the testator approved the paper writing as his will. Two witnesses indeed testified that a signature appended to the paper appeared to be that of testator. The latter witnesses, however, were not subscribing witnesses, and did not witness the signature. It was held that the proof was insufficient to admit this will to probate.

In *Guthrie* v. *Owen,* 2 Humph. (21 Tenn.), 202, 36 Am. Dec., 311, one witness testified that he wrote the will according to the instructions of the testator, and this witness and another witness testified that testator "manifested his satisfaction at the provisions of the will" to both of them. It was held that this will was entitled to probate.

In *McLean* v. *McLean,* 6 Humph. (25 Tenn.), 452, one witness testified that he wrote the will according to instructions of testatrix, and another witness testified that just afterward he was told by testatrix "that was what she wanted done with her property." It was held that

this instrument was sufficiently proven as a will of personalty.

In *Orgain* v. *Irvine*, 100 Tenn., 193, 43 S. W., 768, the will was obviously written by one witness according to directions of testator, and read over and approved in the presence of another witness. It was conceded in that case, apparently, that the paper was adequately proven as the will by two witnesses, and the controversy was over another question.

The original paper writing here in controversy bearing date November 8, 1930, has not been sent up. From the copy of the paper contained in the transcript and from testimony in the record, it appears that this instrument is in the handwriting of two or more persons. Some of it is said to be in the handwriting of Mrs. Watkins. Other parts of it are admittedly not in her handwriting. It would appear that some one may have blocked out a form for preparing a will, and that Mrs. Watkins had undertaken to fill it out. This, however, is speculation.

There is no showing as to when any of the persons who collaborated in the preparation of this paper did his or her part of the writing thereupon. Neither Rayburn nor his wife had any opportunity to see what was written on the sheet of paper when they subscribed their names thereto. So far as Mrs. Rayburn knows, the folded part of the paper may have been blank. Rayburn saw some writing on it, but does not know what that writing was.

Of course, neither of these witnesses could testify that this instrument was written according to the instructions of Mrs. Watkins. No more could either of them testify

that the paper writing produced met the approval of Mrs. Watkins as her will. Neither of these witnesses are able to say what was on the sheet of paper when they subscribed their names, and neither of them are able to say what was written on the sheet of paper after these witnesses subscribed their names. Rayburn and wife could not possibly identify the paper and its contents as that paper was offered for probate.

In addition to the proof of two witnesses that such a paper as is here before us was written according to the instructions of testator and approved by him, in order to be established as a will of personalty, it must be further shown that the paper writing expressed the final intention of the testator, or it will not be admitted to probate. In other words, did Mrs. Watkins herself regard this instrument of November 8, 1930, as a completed will, in the absence of her signature? We cannot believe that she did. It appears from evidence herein that before writing the will of August 10, 1929, she had advised with an attorney at Knoxville; that she in person took that instrument, prepared under the directions of the attorney, to the two gentlemen who subscribed to it as attesting witnesses; that she duly signed this paper, and acknowledged her signature before these witnesses.

Mrs. Watkins was therefore fully conversant with the procedure necessary to the execution of a valid will of real estate. The paper dated November 8, 1930, undertook to dispose of real estate just as did the will previously prepared. Mrs. Watkins could not have been ignorant of the fact that her signature, attested by witnesses, was necessary to a valid will of real estate when she is said to have procured the Rayburns to subscribe

this paper on November 8, 1930. We are satisfied that prior to signing this paper she did not look upon it as a binding or final disposition of her property.

Under the English law, three witnesses are necessary to a will devising real estate. In *Roose* v. *Moulsdale,* 1 Add., 129, 162 Eng. Reprint, 45, the paper offered for probate undertook to pass both real and personal property. It was not witnessed, not good as a will of real estate, but an effort was made to set it up as a will of personalty. The court, however, thought that it did not express the final intent of the testator, and denied it probate. After showing that this paper writing related both to the real and personal estate of the testator, the court said:

"Now if this be so, it is nearly conclusive against the supposition that the deceased meant and intended that this should operate as a final will; for though the deceased, as it has been observed, and as indeed it is to be collected from this very paper, was not a man of letters or of much education, yet, as a man of business and the world, one probably raised, *ex humili,* to a respectable rank in life by his own efforts and exertions, I can hardly suppose him to have been ignorant that the law renders the attestation of three witnesses necessary to every devise of real estate." *Roose* v. *Moulsdale, supra.*

In *Beaty* v. *Beaty,* 1 Add., 154, 162 Eng. Reprint, 54, is was sought to set up as a will of personalty a paper writing signed by testator. This paper contained an attestation clause, but at the time of testator's death no witnesses had been procured to attest the instrument. Probate was denied because, the court said, "if a testamentary paper be imperfect, either in itself, or in the

writer's apprehension of it, it can only be entitled to probate, on proof being furnished of his having been prevented by what is technically called the 'act of God,' from completing it. As, therefore, the natural inference to be drawn from the attestation clause at the foot of a testamentary paper is, that the writer meant to execute it in the presence of witnesses, and that it was incomplete, in his apprehension of it, till that operation was performed—the presumption of law is against a testamentary paper, with an attestation clause not subscribed by witnesses; where the testator is not proved, as he is not suggested even in the present case, to have been prevented by any 'act of God' from going on to complete it, had he so intended.'' *Beaty* v. *Beaty, supra.*

It may be observed that both of the foregoing cases embodied judgments of Sir John Nicholl from whom this court has often quoted as from a very high authority.

In accord with the foregoing is *Walker* v. *Walker,* 1 Mer., 503, 35 Eng. Reprint, 758, to which reference is made, as a matter of interest, for the very learned discussion of some of the questions here involved.

Mrs. Watkins being fully advised of the formalities attendant upon the execution of a valid will of real estate, we cannot believe that she regarded this paper writing bearing date November 8, 1930, as a completed or final will of her estate, real estate included, in the absence of her signature. The authorities just quoted support us in this conclusion.

Moreover, the subsequent conduct of Mrs. Watkins after November 8, 1930, does not indicate that she regarded the paper bearing that date as her will or a paper of any importance. She left it in an old trunk, where

it was found with some tax receipts and old deeds. On the other hand, just a month prior to her death, and about one year after she is said to have acknowledged as her will before Rayburn and wife the paper dated November 8, 1930, Mrs. Watkins took the paper formerly executed as her will and dated August 10, 1929, wrapped this paper up in a bundle with her bonds, and carried this bundle to the bank for safekeeping. She must have regarded the paper thus preserved as her true will and testament.

It may be noted that in each instance in which this court has held an unsigned or incompleted instrument entitled to probate as a will, the testator was prevented by an act of God from signing or completing the instrument. In *Orgain* v. *Irvine, supra,* the testator became mentally incapacitated within 24 hours after the paper was written, and died shortly afterward. In *McLean* v. *M'cLean, supra,* the testatrix died the next day after the paper writing was prepared. In *Guthrie* v. *Owen, supra,* the testator became too tired to go on with the preparation of the paper writing, and died on the next day. We do not say that an act of God must necessarily intervene in order to dispense with signature or completion of a paper writing offered as a will. However, where a testatrix is fully advised as to the formalities incident to the execution of a valid will, where she lays aside and treats as of little value a paper writing prepared one year before her death, never signs that paper, but in the meanwhile preserves and deposits for safekeeping another paper writing duly executed as her will, we are satisfied such testatrix could not have regarded the unsigned paper as operative.

As pointed out in the text-books, statutes are to be found in most of the states regulating the execution of wills of personalty as well as wills of realty. The execution of wills of personalty has likewise been regulated by statute in England. 1 Vict., chap. 36, sec. 39. In Tennessee, however, as our cases all show, the rules of the ecclesiastical courts in England still prevail with respect to the execution and admission to probate of wills of personal property.

For the reasons stated, we think the circuit judge should have directed a verdict against the paper writing dated November 8, 1930, and offered as the will of Mrs. Julia R. Watkins. The judgment of the Court of Appeals is accordingly reversed, and the case remanded to the circuit court of Roane county for further proceedings in accordance with this opinion.