PULLEY et al. v. CARTWRIGHT et al.—137 S. W. (2d), 336.

Middle Section. December 2, 1939.

Petition for Certiorari denied by Supreme Court, March 2, 1940.

T. B. Finley, of Lebanon, for plaintiffs in error, Mrs. Pulley and others.

Allison Humphreys, Jr., of Lebanon, for defendants in error, John Cartwright and others.

CROWNOVER, J. This is a suit to contest a holographic will.

The instrument was probated in common form in the County Court of Wilson County and an administrator with the will annexed was appointed. A petition to contest its validity was filed by the sisters of the testatrix and the children of a deceased brother. It was alleged in the petition that the paper writing in controversy was not the will of Mrs. Retta Allen, deceased, for the reasons that at the time the said paper was executed she was of unsound mind and incompetent to make a valid will; that she was unduly influenced to make the same by the beneficiaries therein; and that the instrument was not executed in accordance with the statute (Code, sec. 8090).

The defendants filed an answer denying the allegations of the petition.

Thereupon the cause was regularly transferred to the Circuit Court of Wilson County for trial on the issue of devisavit vel non. Declaration and plea were filed. The cause was tried by the judge and a jury. At the close of the plaintiffs' evidence and again at the conclusion of all the evidence the defendants moved the court for peremptory instructions in their favor on the ground that the instrument was not shown to be a will executed in accordance with the statute, which motions were overruled. The jury found that the instrument was the will of Mrs. Allen.

The defendants' motion for a new trial was overruled and they appealed in error to this Court and have assigned errors, which, when summarized, are as follows:

(1) There is no evidence to sustain the verdict, and the court erred in refusing to direct a verdict for defendants.

(2) The court erred in admitting the testimony of Mrs. Will Graves as to declarations made by Mrs. Allen as to her will.

Mrs. Retta Allen, a widow, died on January 30, 1939, leaving a personal estate consisting of $14 in money and household furniture of little value and about fifty acres of land.

Her alleged holographic will was found several hours after her death, in a tobacco sack inside of her pocketbook.

The will is as follows:

"Will of Retta Allen.

"this is for Elizabeth Joe Charles and Erline after my expenses are all paid I want what I have left to go to you all. take out what you all want to keep, then gather everything I have and sell when you do the place want Joe to have the wedding ring quilt and Jo Anne the flower garden.

"please dont any one think hard of me for Charles has been better to me than any one in the world.

"Retta Allen."

Mrs. Allen had no children. Her next of kin were her sisters, Mrs. Ada Pulley and Mrs. Bettie Riggan, and the children of a deceased brother, all of whom are the contestants in this suit.

Mrs. Allen had reared her niece, now Elizabeth Riggan Clemmons, wife of Joe Clemmons, and had always been much attached to Erline Spence, wife of Charles Spence—all of whom are the beneficiaries in the will. "Jo Anne" mentioned in the will was the infant daughter of Elizabeth and Joe Clemmons.

Mrs. Allen owned a small farm of about fifty acres which she rented for $5 a month, reserving two rooms of the house for her own use.

In December, 1938, she became ill and had to go to a hospital for an operation.

Mrs. Will Graves, a friend of hers, called on her at the hospital just before the operation. She told Mrs. Graves that she feared she would not survive the operation. Mrs. Graves testified that she then asked her to get her purse and give it to her; that when she had done so Mrs. Allen removed from the purse this paper writing, above set out, and told her "this was what she wanted done if she didn't survive the operation"; that she then put the paper back into the purse and asked her to give the purse to the doctor's secretary and ask her to lock it up, which Mrs. Graves did; that when she went to visit Mrs. Allen after the operation the purse was again in Mrs. Allen's possession.

Mrs. Allen was carried back to her home where she died three weeks later.

Mrs. Gertie McCaleb, formerly Miss Warren, who nursed Mrs. Allen in her last illness at her home, testified that Mrs. Allen kept his purse in her room and kept her money in it; that the evening before Mrs. Allen's death she (Miss Warren) carried it into the

back room and put it in the tray of an old trunk; that there was $15 in the pocketbook.

Mrs. Ada Pulley testified that she saw this pocketbook in Mrs. Allen's room in the dresser drawer during her illness; that she found the will in a tobacco sack in the pocketbook in the trunk in the back room several hours after her death; that in addition to the will there was in the pocketbook $14 and a bunch of keys; that the nurse, Miss Warren, told her she had put the pocketbook in the trunk. On cross-examination she testified that she read the will on Thursday night before Mrs. Allen's death.

Mrs. Riggan testified that during Mrs. Allen's last illness the pocketbook was in her room in the dresser drawer; that she was present when the will was found after her death; that the pocketbook contained only the will, $14, and a bunch of keys; that they had heard that Mrs. Allen had written a will and that it was in the pocketbook.

H. E. Riggan testified to the same effect.

When J. H. Cartwright, administrator with the will annexed, took possession of the pocketbook he discovered in it a receipt from Dr. John Graves to Mrs. Allen for $10, dated November 21, 1938.

Mrs. Pulley, Mrs. Riggan and H. E. Riggan testified that this receipt was not in the pocketbook when they opened it and discovered the will immediately after Mrs. Allen's death. But on cross-examination Mrs. Pulley said she didn't look to see if there was anything beside the will, and Mrs. McCaleb testified that there was a folded paper in the pocketbook in addition to the tobacco sack.

There was no evidence on the questions of mental capacity or undue influence, hence these contentions were abandoned.

1. The contestants insist that the requirements of the statute (Code, sec. 8090) have not been complied with, as (a) The paper writing is not testamentary in character and does not appear to be a will. (b) It is not shown that the handwriting of the testatrix is generally known by her acquaintances. (c) It is not proved by at least three credible witnesses that the writing, and every part of it, is in her hand. (d) The paper was not found after her death among her valuable papers.

■ After an examination of the record we think the statute has been complied with.

The statute is as follows: "But a paper writing, appearing to be the will of a deceased person, written by him, having his name subscribed to it, or inserted in some part of it, and found, after his death, among his valuable papers, or lodged in the hands of another for safe-keeping, shall be good and sufficient to give and convey lands, if the hand writing is generally known by his acquaintances, and it is proved by at least three credible witnesses that they verily believe the writing, and every part of it, to be in his hand."

In order that an holographic will may be good and sufficient to

convey lands in Tennessee it must conform to the requirements of this statute. Howell v. Moore, 14 Tenn. App., 594; Campbell v. Henley, 172 Tenn., 135, 110 S. W. (2d), 329; Dietz v. Gallaher, 169 Tenn., 435, 88 S. W. (2d), 993; Fransioli v. Podesta, 21 Tenn. App., 577, 113 S. W. (2d), 769.

▮ (a) The language of the will clearly shows the intention of the maker concerning the disposition of her property after her death. It is therefore a will and falls within the statute so far as this point is concerned. Crutcher v. Crutcher, 30 Tenn. (11 Humph.), 377; Reagan v. Stanley, 79 Tenn. (11 Lea), 316; Howell v. Moore, 14 Tenn. App., 594.

▮ ''All that is required to constitute 'a paper writing appearing to be the will of a deceased person,' within the meaning of the statute, is that the writing shall purport to be a disposition of the writer's property after his death. Any writing, however informal, which does undertake to so dispose of property, or to control its disposition, falls within the statute on this point, whether the language used be sufficient for the purpose intended or not; for that is a matter of construction by the proper court after the testamentary character of the instrument has been determined.'' Sizer's Pritchard on Wills and Executors, 283, 284, sec. 232; Reagan v. Stanley, 79 Tenn. (11 Lea), 316, 322.

▮ ''It is sufficient if the words of the writing propounded for probate 'unequivocally show that the writer intended it as a post-humous disposition of his estate, both real and personal . . .' McCutchen v. Ochmig, 1 Baxt., 390, 397.'' Druen v. Hudson, 17 Tenn. App., 428, 432, 68 S. W. (2d), 146, 149.

▮ The testimony of Mrs. Graves is evidence that Mrs. Allen intended it to operate as her will. Her testimony is competent for this purpose. Howell v. Moore, 14 Tenn. App., 594; Crutcher v. Crutcher, 30 Tenn. (11 Humph.), 377; Marr v. Marr, 39 Tenn. (2 Head.), 303.

Mrs. Riggan testified that the family had heard that Mrs. Allen had written a will and was keeping it in her pocketbook. Mrs. Pulley took it from the pocketbook in Mrs. Allen's room before her death and read it and put it back.

▮ ''Whether a writing propounded and contested is or not prima facie testamentary in its nature and character is a matter for the court to determine.'' Howell v. Moore, 14 Tenn. App., 594.

▮ (b, c) Mrs. Will Graves testified that Mrs. Allen's handwriting was known in the neighborhood and among her acquaintances; that Mrs. Allen was active in Church, Sunday School and Club affairs; that she and Mrs. Allen took the church census together; that occasions had arisen in which Mrs. Allen would write things down and people in the neighborhood would read the same; that she knew her handwriting and this will was in her handwriting.

It was stipulated that Mrs. Clint Baird, if called to testify, would testify to the same effect.

It was proved by three credible witnesses—Mrs. Will Graves, Mrs. Clint Baird and Mrs. Alfred Lannom—that the handwriting, and every part of it, was in Mrs. Allen's hand. These witnesses testified that they read "every word" of the will and it was "altogether in her hand."

We think this evidence about her handwriting was sufficient to carry the case to the jury. Sizer's Pritchard on Wills and Executors, 294, 295, secs. 241, 242.

(d) The will was kept by Mrs. Allen in her pocketbook along with all the money she had and her keys, and the pocketbook was kept in the dresser drawer in her room. These were all the valuables she possessed.

"The intention of the statute is, that it shall appear to be a will, whose existence and place of deposit are known to the testator, and that he has it in his care and protection, preserving it as his will." Tate v. Tate, 30 Tenn. (11 Humph.), 465.

" 'Valuable papers,' within the meaning of the statute, are such papers as are kept and considered worthy of being taken care of by the particular person, having regard to his condition, business, and habits of preserving papers. They do not necessarily mean the most valuable papers of the decedent even, and are not confined to papers having a money value, or to deeds for land, obligations for the payment of money or certificates of stock. The requirement is only intended as an indication on the part of the writer that it is his intention to preserve and perpetuate the paper as a disposition of his property and that he regards it as valuable; consequently, the sufficiency of the place of deposit to meet the requirements of the statute, will depend largely upon the condition and arrangements of the testator." Sizer's Pritchard on Wills and Executors, 290, sec. 237; Marr v. Marr, 39 Tenn. (2 Head), 303, 306.

From the evidence it is clear that Mrs. Allen regarded her pocketbook as the safest place she had in which to keep her will. It appears that the only other things she had of value were $15 and her keys, which she kept in the pocketbook with the will.

The fact that the nurse moved the pocketbook after Mrs. Allen was no longer able to watch over her affairs, a few hours before her death, and put it in the trunk in the next room, without her knowledge or consent, cannot alter the situation and require the beneficiaries under the will to show that the trunk was where Mrs. Allen kept her valuable papers.

There was some evidence that a receipt from Dr. Graves was also in the purse. This was denied by other witnesses, but as the jury decided the issues in favor of the proponents of the will we think the question was settled that it was in the purse.

It is not necessary that an executor be named in order to constitute an instrument a will. Sizer's Pritchard on Wills and Executors, 4, sec. 3.

And it is not necessary that the will be dated.

These questions were all submitted to the jury and there is substantial evidence to support the verdict.

"It is for the jury to determine, under proper instructions as to the competency and admissibility of the evidence, whether, from all the circumstances, they believe the writing was deposited by the deceased among his valuable papers, or lodged in the hands of another for safe-keeping, with the intention that it should be his will. No particular measure of proof is required; but the act leaves the fact of finding the will, or of its being lodged in the hands of another, and the intention of the deceased in writing and depositing the script, to be established by the same sort and degree of evidence ordinarily used in other cases." Sizer's Pritchard on Wills and Executors, 294, sec. 240.

2. The defendants' second assignment of error, as to the admission of Mrs. Graves' testimony, is not well made for the reason that the evidence complained of is not set out in full or in substance in the assignment. Tennessee Procedure by Higgins & Crownover, 793, sec. 1987; Hood v. Grooms, 4 Tenn. App., 511, 515. This assignment is therefore overruled.

All the assignments of errors being overruled, it results that the judgment of the lower court admitting the said paper writing to probate as the last will and testament of Mrs. Retta Allen, deceased, will be affirmed, and the cause will be remanded to the Circuit Court of Wilson County in order that said original will be certified and delivered to the County Court Clerk of Wilson County for entry on the records of said court as ordered and adjudged by that court and set out in said judgment. All the costs of the cause including the costs of the appeal are adjudged against the contestants, Mrs. Ada Pulley and others.

Faw, P. J., and Felts, J., concur.