# CARVER et al. v. ANTHONY et al.—245 S. W. (2d) 422.

Eastern Section. July 18, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

D. K. Thomas and Frank B. Bird, both of Maryville, and Erma Greenwood and R. R. Kramer, both of Knoxville, for Carver et al.

Hugh De Lozier and Goddard & Gamble, all of Maryville, for Anthony et al.

McAMIS, J. This is a will case coming to this court by the separate appeals of the proponents and contestants. The case originated in the County Court of Blount County where John W. Anthony, Administrator of the estate of W. D. Carver, deceased, and Kathleen Carver Effler offered for probate as the will of W. D. Carver two paper writings dated, respectively, December 27, 1933, and March 10, 1934.

In the Circuit Court the trial judge held the paper executed in 1933 non-testamentary in character and, on that ground, directed a verdict for contestants. The 1934 paper was admitted to probate as a properly executed and witnessed will effective as to personal property only. The latter action was on a directed verdict for proponents on the theory that proponents had established, prima facie, that the deceased intended it to operate as his will and that contestants had offered no proof to the contrary. We consider first the question of the testamentary character of what will be herein referred to as the 1933 paper. It reads:
"Administrator of
 W. D. Carver—

Dec. 27—1933

Townsend Tenn—

I want my Sister Candis Jenkins to take Kathleen our adopted Daughter to Have Full control of Her give Her The Proper Instruction—Keep Her in School—In case She will not obey Take Leagle Proceedings and Have Her go to the Reform School—for I do not want any Disgrace are Reproach Brought on Her—She must Have a Boss that Will correct Her at this age of Life Candis

Jenkins to have Full charge of My Property—To Live in Same—are Rent to some Nice Family that Will take Care of the House. and use the Proceeds for The Family— This is What I want Candis Jenkins to do—Candis this is the Only thing that Greaves me is The Leaving Kathleen without Protection—Will You Protect Her. and Keep The Poor Sweet *Orphan* from a Disgrace In case Belle and I must go—and Take a chance on Being repaid latter some way—

W. D. Carver—''

It is conceded that this paper is entirely in the handwriting of the deceased and that, if testamentary in character, it is entitled to probation as the holographic will of W. D. Carver. The questions are whether or not it is testamentary in character and whether a court of probate can construe it for the purpose of determining whether it was intended to operate as a will.

Contestant Kathleen Carver Effler was reared in the home of W. D. Carver and wife who took her into their home in 1921 when she was a few months old. She was treated as their daughter and was often referred to by W. D. Carver as his adopted daughter. It was stated at the trial, however, by her counsel that they had been unable to find any record of an adoption proceeding. There was no proof on that point offered by either party. Kathleen continued to live in the Carver home until 1935 when, at the age of 16, she married and established a home of her own. Although disputed, there is substantial evidence that she continued to hold the affections of W. D. Carver until his death on November 10, 1949.

In McCutchen v. Ochmig, 1 Baxter, 390, 60 Tenn. 390, it was said in reference to paper writings offered as holographic wills: ''It must appear to be a will, and this requisite may be supplied by any words that unequivocal-

ly show that the writer intended it as a posthumous disposition of his estate, both real and personal, or that he intended by it to dispose of his personalty alone. For it is a question of intention at last, and the Court and jury are to determine whether it be a will as to both species of property, or a will as to either. But the first and paramount question is, whether it be a will at all under the statute. * * * There must be a depository for the paper writing, and it must be so lodged and deposited as a will, and for safe-keeping as such, and of this deposit and lodgment there must be affirmative and positive proof. No mere inference or conjecture of the intention of the writer in such case can answer the requirements of the statute."

Druen v. Hudson, 17 Tenn. App. 428, 68 S. W. (2d) 146, 149, cites McCutchen v. Ochmig, supra, and holds that animus testandi is shown if the writing offered for probate discloses an intention on the part of the writer that it should control and direct the disposition of his property after death and "the words of the writings propounded for probate 'unequivocally show that the writer intended it as a posthumous disposition of his estate' ".

█ The statute, Code, Section 8090, only requires that to be a will the paper offered for probate shall purport to be a disposition of the writer's property after his death, however informal the expressions used, and without regard to whether the language employed by the writer is sufficient for the purpose intended, that being a matter of construction by the proper court after the testamentary character of the instrument has been established. Sizer's Pritchard on Wills and Executors, 283, 284, Sec. 232; Reagan v. Stanley, 11 Lea 316, 79 Tenn.

316, 322; Pulley v. Cartwright, 23 Tenn. App. 690, 137 S. W. (2d) 336.

■ It is well settled that the form of a paper does not affect the right to have it probated if it was the intention of the deceased that it should operate after his death even though not aware at the time that he had performed a testamentary act. Jones v. Jones, 163 Tenn. 237, 43 S. W. (2d) 205.

■ ■ Although, generally, questions of construction are not within the jurisdiction of the probate court, Condry v. Coffey, 163 Tenn. 508, 43 S. W. (2d) 928, we think the cases above cited clearly imply that the probate court has power to construe the paper offered to the extent of determining whether or not it is testamentary in character. The power to probate an instrument as a will necessarily includes the power to determine whether or not it is a will and if that depends upon construction to construe it. It would be an unsound practice for probate courts to be compelled to probate a paper as a will when, by a fair construction, it is not a will at all. Jurisdiction carries with it power to determine every issue or question properly arising in the case. 21 C. J. S., Courts, Section 135.

The accepted view seems to be that on probate or contest the probate court has power to construe a paper offered for probate for the purpose of determining whether or not it is testamentary in character and should be admitted to probate. Page on Wills, Section 567; 57 Am. Jur. 530, Wills, Sec. 777; Ragland, Adm'r, v. Wagener, 142 Texas 651, 180 S. W. (2d) 435, 152 A. L. R. 1232.

■ As said by the California Supreme Court in Re Plaut, 27 Cal. (2d) 424, 164 P. (2d) 765, 162 A. L. R. 837, 840, the only issue before the court on probate or contest is whether the paper offered is or is not the will

of the deceased and the power to construe will be exercised to the extent it is necessary to the determination of that issue but no further.

■ We think the learned trial judge correctly construed the 1933 paper as non-testamentary in character. The principal concern of the writer seems to have been to provide for the control and protection of Kathleen who is referred to as the writer's adopted daughter, for which purpose or as compensation the sister was to have control of "my property". If Kathleen was an adopted daughter as assumed it could be that the writer had in mind that she would inherit the property and, being only about 12 years of age, would need a guardian to have her custody and control the property.

While, perhaps, the natural inference is that the paper was written in contemplation of death, it does not say that it is not to take effect at once or only after the death of Belle, the writer's wife. In either of those events it would not be a will as wills take effect only at the death of the testator. While the writing is addressed to "Administrator of W. D. Carver" which is suggestive of testamentation and that the writing is not to become operative during the life of the writer, it is significant that Candis Jenkins is not named as executor ("Administrator") and it is of even greater significance that no disposition of property is made. Candis Jenkins, it is true, was to "take charge of" and use or rent out the property and use the proceeds if rented. But whose property was it to be considered, "my property", or Kathleen's? Was Candis Jenkins to account for the use of the property or for the rent? The writing does not say.

■ As we have seen, a will is an instrument taking effect at death and disposing of property and whether

this writing was intended to operate as a will must not be left to speculation and conjecture.

The writing of March 10, 1934, is in the form of a will and purports to give all the real and personal property of W. D. Carver to his "adopted daughter, Kathleen". It concludes: "This being my last will, I being in my right mind and good Health." It was found at deceased's home among his valuable papers. It is typewritten in form and we think it is fairly apparent that it was written by Mr. Carver, a layman, without the assistance of a lawyer. A blank space was provided for the testator to sign and two other spaces each followed by the word "Witness" appear immediately below the first space. W. D. Carver's signature appears on the first line. Three witnesses familiar with his handwriting testified that it was genuine. S. P. McNeil signed as a witness on the top line provided for witnesses. The other is blank. McNeil's testimony is that he worked with Mr. Carver in a freight office for many years and, while not being able to remember the occasion, "I have it in my mind that Bill (Carver) brought it to me and laid it down on my desk and I signed it."

Proponents proved, over the objection of contestants, a number of declarations made by the deceased both that he intended to make a will in favor of Kathleen and that he had done so.

Kathleen's testimony is that the deceased told her many times that he was her natural father and that, "he said he had it fixed—a will made for me to get everything he had." Will Linkenfelter testified that after deceased had expressed a desire to give his property to Kathleen the witness told him "he would have to fix it" to which he replied, "I have done fixed it." Boyd Effler's testimony is summed up in the following: "He told me he

aimed for her (Kathleen) to have what he had. Told me he had made a will to her and wanted her to get it.'' There is also evidence of declarations made in later years to the effect that Kathleen's husband would not get his property and use it to buy whiskey—that if he gave Kathleen anything he would just hand it to her.

We think these declarations were properly admitted as furnishing the equivalent, along with other evidence, of the second witness to the factum of a will of personal property as required by our cases.

■ At the time the will was written there was no statute in Tennessee governing the execution and attestation of wills of personalty. Under the common law, as relaxed by our cases, the general rule is that while two witnesses are required to establish a will of personalty, they need not be subscribing witnesses as in the case of realty. Nor is it necessary that two witnesses should prove the fact of the execution of the paper. One may prove the making or contents and the other extrinsic circumstances tending to corroborate the act itself. It is enough if the whole proof is the equivalent of two witnesses to the factum of the will. Suggett v. Kitchell, 6 Yerg. 425; Johnson v. Fry, 1 Cold. 101; Franklin v. Franklin, 90 Tenn. 44, 16 S. W. 557; State, ex rel. v. Goodman, 133 Tenn. 375, 181 S. W. 312; Dietz v. Gallaher, 169 Tenn. 435, 88 S. W. (2d) 993; Taylor v. Taylor, 14 Tenn. App. 101; Ball v. Miller, 31 Tenn. App. 271, 214 S. W. (2d) 446. It is said there is nothing that requires so little formality as the making of a will of personalty. Crutcher v. Crutcher, 11 Hump. 377, 30 Tenn. 377; McCutchen v. Ochmig, 1 Baxt. 390, 60 Tenn. 390.

A number of the cases cited deal with the question of the sufficiency of declarations of the testator, in conjunc-

tion with other evidence, to equal the testimony of two witnesses to the factum.

In Suggett v. Kitchell the proof consisted of the testimony of one witness that he wrote the will as directed by the testator and signed his name to it and that of one other witness that the testator had said on a former occasion that he intended to dispose of his property as the will purported to do. There was no other proof and this was held insufficient. The court there distinguished between declarations of an intention to make a will and declarations referring to a will already made when it said: "It is not like a case where a testator is heard to say he had already made his will and that it was in the hands of another person, and that person afterwards produces it." The competency of declarations both before and after the execution of the will was assumed.

In Johnson v. Fry, opinion by Mr. Justice Caruthers, it was said, 1 Cold. at page 103: "One (witness) may prove the making or contents, and the other some previous declarations, subsequent recognitions, or other extrinsic circumstances, tending to corroborate the act itself. 1 Wms. on Ex. 287, 288."

In Franklin v. Franklin, supra, the opinion makes a passing reference to the absence of any proof that the testator ever claimed to have made a will.

The question was directly presented in Taylor v. Taylor where the court charged the jury in the exact language of Justice Caruthers above quoted. This was assigned as error. The assignment was overruled, the court saying: "We are of opinion that it is a correct statement of the law, supported by the authorities hereinafter cited."

It is generally accepted that while declarations of the testator cannot supplant statutory requirements

and are not of themselves sufficient to establish the due execution of the will, they are admissible in corroboration of direct evidence of the execution of a will conforming in general nature with the declarations. Page on Wills, pp. 1129, 1130; 57 Am. Jur. 593, 911; Annotation, 62 A. L. R. 707 et seq, and cf. Beadles v. Alexander, 9 Baxt. 604, 68 Tenn. 604.

There is nothing to the contrary in cases involving testamentary intent, illustrated by Dietz v. Gallaher, 169 Tenn. 435, 88 S. W. (2d) 993, and Campbell v. Henley, 172 Tenn. 135, 110 S. W. (2d) 329, and cases involving undue influence where declarations are competent only to show the state of mind of the testator and not as substantive proof of undue influence, Hobson v. Mooman, 115 Tenn. 73, 90 S. W. 152, 3 L. R. A., N. S., 749 and cases there cited. Nor do we think cases involving forgery, Ricketts v. Ricketts, 151 Tenn. 525, 267 S. W. 597, and the revocation of a solemnly executed will of realty, Hickey v. Beeler, 180 Tenn. 31, 171 S. W. (2d) 277, require a different holding. The reasoning of all these cases is that where it is necessary that the testamentary act be performed in compliance with the statute it would be unsafe to allow proof of a less reliable character to be substituted for that required by the statute or to permit declarations of the testator to be admitted as proof of revocation of a solemnly executed will.

It must be conceded that some of this danger attends the admission of evidence of such declarations as constituting a part of the equivalent proof in wills of personalty. But, as a safeguard, the cases hold, as shown, that they can be considered only as evidence corroborative of other more reliable evidence.

It is earnestly insisted that proof of such declarations is admissible only where the testator has the paper before

him at the time he makes the declaration or refers to it as a paper in the hands of some third person as assumed in Suggett v. Kitchell, supra, in connection with Judge Green's statement in that case. The argument is, of course, plausible as applied to the weight to be accorded such declarations but we think it goes to the weight and not to the admissibility of the testimony.

In this case the paper on its face appears to be a will. It was preserved for some reason for approximately 15 years by the testator and upon his death was found among his valuable papers. There is undisputed evidence that the signature appearing on it is his genuine signature and it was witnessed by his close friend and business associate. The will as presented for probate conforms to the declarations established by the evidence and with a natural desire to make the child he had reared in his home the object of his bounty. It seems to us unrealistic to say that they cannot be considered as corroborative evidence.

 While Johnson v. Fry, supra, 1 Cold. 101, 41 Tenn. 101, holds that one attesting witness and proof of the genuineness of the testator's signature are not the equivalent of the testimony of two witnesses to the factum, we have here the declarations of the testator and the circumstance of the preservation of the paper for many years. We think considering all the circumstances the proof is sufficient under the rule. This might be determined as a matter of law except for the contradictory declarations shown by contestants.

 We are also of opinion the case should have gone to the jury on the question of a completed testamentary act. While it is true a will may be good as to personalty and invalid as to realty because not witnessed by two witnesses, the will in this case speaks of both

personalty and realty. It is incomplete as to realty. Was it left so because of a desire to pass only the personal property of the testator or because of a lack of testamentary intent? The first hypothesis may be the correct one. On the other hand, evidence of incompleteness appearing on the face of the paper is some evidence that it was never regarded as a completed testamentary act whether or not the paper be a holograph. Campbell v. Henley, supra, 172 Tenn. at page 143, 110 S. W. (2d) 329.

As well said by Presiding Judge Anderson: "If the animus testandi be doubtful, all the facts or circumstances may be looked to, and it is for the jury to determine from all the evidence, intrinsic and extrinsic, whether or not the testator intended the instrument to operate as his will. Sizer's Pritchard on the Law of Wills and Administration, Section 232; Crutcher v. Crutcher, supra; Marr v. Marr, supra; Hopper v. McQuarry, supra; McCutchen v. Ochmig, supra; Douglass v. Harkrender, supra [3 Baxt. 114]; Reagan v. Stanley [11 Lea 316], 79 Tenn. 316; Pulley v. Cartwright, 232 S. W. (2d) 338, 341, 23 Tenn. App. 690, 137 S. W. (2d) 336." Smith v. Smith, 33 Tenn. App. 507.

The cause will be remanded for a new trial on the 1934 writing. Costs of appeal will be paid by the estate and costs of the Circuit Court, accrued and to accrue, left to abide the final result.

Hale and Howard, JJ., concur.