# HELEN WALTERS SMITH and MYRTLE WALTERS BLACKWELL v. WILLIAM M. WEITZEL, MAURICE L. WEITZEL, BETTY McLEOD, CORINNE WALTERS.—338 S. W. (2d) 628.

Middle Section, Nashville.   April 1, 1960.

Certiorari Denied by Supreme Court September 9, 1960.

376

Alexander W. Cortner, Clarksville, E. J. Walsh, Quentin Housholder, Nashville, Marks & Fleming, Clarksville, for plaintiff in error.

Watkins, McGugin & Stewart, W. P. Cooper, Nashville, for defendant in error.

## I.

SHRIVER. J. This is an appeal from a judgment of the Third Circuit Court of Davidson County, Tennessee, wherein there were admitted to probate eight envelopes containing certain stock certificates as parts of the entire last will and testament of Nan Dabney Hughes, deceased.

In the reply brief of the defendant in error, Corinne Walters, counsel make the following pertinent statement as to the question to be considered on appeal;

"This is a will contest case in which the contestants (appellants here) raise no question respecting the intention of the testatrix, testamentary capacity, fraud or undue influence.

"*The sole question is whether purely technical considerations shall be permitted to defeat the manifest intention of the testatrix.*

"The jury and trial judge rejected those technical objections. They are now being urged on this Court by the appellants, who were the contestants below.

"The Circuit Court admitted to probate a number of papers as together constituting the *whole* Last Will and Testament. Appellants concede that two of the papers are testamentary but they contest the probate of the remaining papers. The contestants are

beneficiaries under both the uncontested papers and the contested papers.

"The only question presented is whether the contested papers are parts of the whole Last Will and Testament and entitled to probate as such. Their right to probate might rest (1) in their *own* virtue as testaments or (2) in being extrinsic papers made parts of the Will by legally sufficient integration."

A clear and concise statement of the history of the proceedings in the County Court as presented to the Circuit Court is contained in the declaration of the Southern Trust Company, Executor of the estate of Nan Dabney Hughes, deceased, which declaration was filed in the Circuit Court of Davidson County.

Said declaration is as follows:

"I.    On May 16, 1957, the County Court of Davidson County, Tennessee, admitted to probate a Will of Nan Dabney Hughes, deceased, dated June 30, 1949, and a Codicil thereto dated December 19, 1953, as being her entire Last Will and Testament. The Southern Trust Company, a corporation with its principal office in Clarksville, Montgomery County, Tennessee, qualified and was appointed Executor on May 16, 1957, and is still serving in that capacity.

"II.    The Executor, being uncertain of its duties and obligations under said Will as probated, filed its original bill in Part II of the Davidson County Chancery Court on June 18, 1957, in the cause of Southern Trust Company v. Corinne Walters et als, (Rule Docket Number 79092), for a construction of said Will. In this Chancery cause the question arose as

to whether or not seven envelopes containing valuable securities constituting the major part of the assets of testatrix's estate should be considered as parts of her entire Last Will and Testament in addition to the Will and Codicil already probated; whereupon, the Chancellor suspended the proceedings until this question could be presented and determined in the County Court.

"III. Following the suspension of the proceedings in said Chancery Court, Maurice L. Weitzel, William M. Weitzel (individually and as executors under the will of Junie V. Weitzel), Betty McLeod, and Corinne Walters filed petitions in said County Court to have the aforementioned seven envelopes probated as parts of testatrix's Last Will and Testament. The Southern Trust Company, as set out in its answers to said petitions (particularly its answer to the petition of Corinne Walters and cross-petition), produced the envelopes in question and other writings of testatrix to said County Court so that it could be determined what papers and/or writings, in addition to the testatrix's previously probated will and codicil, if any, to be probated as parts of her entire Last Will and Testament.

"To all of the foregoing petitions Myrtle Walters Blackwell and Helen Walters Smith filed a demurrer; and at the hearing of the cause in the County Court on February 24, 1959, His Honor, the County Court Judge, held that a contest had been and was presented and ordered the fact of contest and the entire record, including the aforementioned petitions, answers, cross-petition and demurrer, to be certified to the Circuit Court.

"IV. The description of the seven envelopes containing the securities constituting assets of the estate of testatrix and other paper writings of hers, all of which were produced in the County Court, is fully set out in the Executor's answer to the petition of Corinne Walters and in its cross-petition, which answer and cross-petition constitutes a part of the record certified to this Court. All of the material allegations in said answer and cross-petition are incorporated herein by reference and adopted and made a part hereof as though set out fully herein.

"V. The contest as certified to this Court concerns only the above mentioned seven envelopes, and the Executor, being advised that the contest in this Court is a proceeding in rem involving the distribution of testatrix's estate and not an action between parties, does not assume a position of either plaintiff or defendant in this cause relative to said envelopes. The Executor will, on the hearing of this matter, produce the envelopes in question so that it can be determined if said envelopes do or do not constitute parts of the entire Last Will and Testament of testatrix, Nan Dabney Hughes.

"Alexander W. Cortner /s/

"Alexander W. Cortner, Attorney for the Executor, Southern Trust Company."

A declaration was also filed by the plaintiffs, Maurice L. Weitzel, and William M. Weitzel, as individuals and as executors of Mrs. Jenie V. Weitzel, deceased, and Betty McLeod joined in said declaration.

Plaintiff, Corinne Walters, also filed a declaration in the Circuit Court, said declaration averring among other things;

"Plaintiff Corinne Walters produces in open Court eight envelopes (and their contents) each containing endorsements and other writings on its cover; all in the handwriting of the deceased, Nan Dabney Hughes, all of which were found in the bank lock box of said decedent after her death, and which are identified, incorporated, and included by reference in the documents dated June 30, 1949, and December 19, 1953, which have been probated as her Last Will and Testament and as a Codicil thereto on May 16, 1957, in the County Court of Davidson County, Tennessee, and duly recorded therein in Book 69, page 447."

The declarations of all of these parties aver that the envelopes and their contents are subject to probate as parts of the Last Will and Testament of Nan Dabney Hughes which they propose to prove in solemn form.

In the Circuit Court the contestants filed a demurrer which clearly sets out the various grounds upon which they rely. These grounds being included in the assignments of error will be discussed hereinafter.

The demurrers were heard and overruled by Circuit Judge, Henry F. Todd, following which special pleas and replications thereto were filed.

The trial Judge entered an order setting out the issues to be submitted to the jury wherein it was recited that the proponents produced in open court certain paper writings which included the original will of June 30, 1949, the

codicil thereto of December 19, 1953, and listed the various envelopes with the names of the proposed recipients thereon which the proponents aver constitute all of the Last Will and Testament of Nan Dabney Hughes, deceased, and offer to prove same in solemn form and demand a jury to try the cause..

The decree then recites;

"And the contestants, Helen Walters Smith and Myrtle Walters Blackwell, come and defend and aver that they admit that the said documents dated June 30, 1949 and December 19, 1953, are the last will and testament of Nan Dabney Hughes, but deny that said envelopes and/or any of them or any of their contents constitute any part of the valid last will and testament of Nan Dabney Hughes.

"This order is entered by the Court to make up the issues in this cause in lieu of pleadings heretofore filed by the parties in this Court and cause.

"Entered June 18, 1959.

"Henry F. Todd /s/

"Judge"

As hereinabove indicated, the cause was tried before the Judge and a jury with the issue submitted to the jury as to whether the papers in question constitute a part of the Will of Nan Dabney Hughes, and the jury found the issues in favor of the proponents. The decree of the Court setting out and describing the Will, the Codicil and the various envelopes, recites that they do in fact constitute the whole Last Will and Testament of Nan Dabney Hughes and are admitted to probate in solemn form as such.

After a motion for a new trial was heard and over-ruled, the cause was appealed in error to this Court.

## II.

Nan Dabney Hughes was an educated, cultured woman of mature years who had considerable business experience. She had a substantial estate consisting of a valuable home-place with household furniture and furnishings located in Nashville, Tennessee, and considerable personal property consisting mainly of common stocks which were found in envelopes in her lock-box in the First National Bank of Clarksville, Tennessee.

It is seen that there is no question made as to the validity and binding effect of the Will executed June 30, 1949 and the codicil dated December 19, 1953, both which Will and Codicil were originally probated in the County Court of Davidson County on May 16, 1957, each being duly signed and witnessed in regular form.

The contest arises over the envelopes which were found in the testatrix's lock-box containing shares of stock with the names of the various beneficiaries on the envelopes in the handwriting of the testatrix along with the number of shares of stock or contents of each envelope also written thereon in her handwriting and each envelope bore her signature.

The envelopes in question are of brown manila and have printed thereon at the top, the words, "Property of", underneath which appears "Name" followed by suitable dashes and underneath that "Address" with dashes following the same. All the above is at the top of the envelope. Then farther down and more or less in the middle about two or three inches from the top is the

word "Memoranda" and below that are a dozen lines on which to write entries concerning the contents of the envelope: At the bottom of each envelope is printed the name of the First National Bank, Clarksville, Tennessee.

A typical envelope as used by the testatrix, is one where there is written opposite the printed word "Name" in the handwriting of Nan Dabney Hughes, "Mrs. Helen Walters Smith". Opposite "Address", is written "Nashville, Tennessee", then below the word "Memoranda" is written in the hand-writing of Nan Dabney Hughes, "One hundred shares of General Motors common" and below that is the signature "Nan Hughes".

The Will of Nan Dabney Hughes, dated June 30, 1949, recites that she is a citizen of Davidson County, Tennessee, and of sound and disposing mind, etc.

The first and second items of the Will are as follows:

"First: It is my desire that all my just debts and accounts, including my funeral expenses, shall be paid by my Executor hereinafter named as soon after my death as possible.

"Second: It is my purpose and intention to give to certain of my relatives, some of my personal property consisting of stocks and/or bonds, which items I propose to allocate to each and place in envelopes bearing the name of each such relative and leave in my Safe Deposit Box. This property I do not wish handled under the executorship hereinafter set up, but my executor shall deliver same to the named relatives without responsibility other than to take the proper receipt therefor and to declare same and pay any inheritance or other taxes due thereon out of the

residue of my estate, and such gifts shall be as full and complete as though set out in full herein. In making distribution in this manner the executor shall be relieved of all further responsibility when and as each one of the deliveries have been made.''

The third item disposes of her residence at 814 Benton Avenue, Nashville, Tennessee, and the fourth item provides;

''All the remainder and residue of my estate of every kind and description, whether real, personal or mixed, and wherever situated, I give, devise and bequeath to the children of my sister Mrs. Lutie McConnell, viz; Myrtle Walters, Corinne Walters and Helen Walters.''

It then provides for disposition in the event of their death without issue.

The fifth item nominates and appoints Southern Trust Company of Clarksville, Tennessee, as executor.

The codicil of December 19, 1953 recites,

''I Nan Dabney Hughes, being of sound and disposing mind and memory, do make this codicil to my will dated June 30, 1949.''

The codicil then makes a different disposition of the Benton Avenue property included in item third of the original Will and concludes;

''In all other respects, I hereby ratify and confirm my said will dated June 30, 1949. This December 19, 1953.

(Signed) Nan Dabney Hughes''

And the same is duly witnessed.

It is insisted by counsel for the proponents that, (1) the contested papers are valid holographs; (2) that the contested papers are parts of the Will being incorporated therein by reference or that they become so as facts of independent significance; (3) that they are part of the original Will and Codicil by extrinsic identification and (4) that the Circuit Court had original, plenary jurisdiction respecting all separate papers offered as composing the will, and the jury, from intrinsic and extrinsic facts and circumstances presented to it, found in favor of the proponents and that there is evidence to sustain the verdict of the jury. It is pointed out that there is no assignment to the effect that there was no evidence to support the verdict of the jury.

On the other hand, in the sixteen assignments of error it is urged, among other things, that (1) The writings on the envelopes cannot be probated as holographs because (a) they are not prima facie testamentary in nature; (b) they are not testamentary in form or character; (c) they do not contain a disposition of property to be made upon the death of the testatrix; (d) they do not depend upon the death of said testatrix for consummation; (e) they do not show a testamentary intent; (f) all of the material provisions of the writings on the envelopes are not in the handwriting of the testatrix; and (g) it is apparent that the testatrix adopted the printed matter on the envelopes by filling in the blank spaces provided thereon.

It is further urged that the writings on the envelopes cannot be incorporated by reference because (a) neither the will nor the codicil describe the envelopes as being in existence; and (b) since neither the will nor the codicil

adequately describe the envelopes, identification is impossible.

Certain errors are assigned respecting the charge of the trial Judge which errors will be considered hereinafter.

██ It is assigned as error that the trial Judge refused to allow the contestants to introduce a certified copy of the opinion of the Chancellor in a Chancery suit which was filed to construe the Will.

It appears that this suit was filed and proceeded to a memorandum opinion by the Chancellor but when he came to consider the envelopes and their contents, which are made the basis of the suit, he held that this question was one of probate and, therefore, suspended further proceedings until the probate question is settled.

As we view the matter, the Chancery case has no bearing on the issue before the Court here, and the trial Judge in the Circuit Court was not in error in refusing to put the opinion of the Chancellor before the jury. Therefore, that assignment is overruled.

Probate jurisdiction is original, general and exclusive. See Phillips-Prichard on Wills, Secs. 43, 44 and 337; also Needham v. Doyle, 39 Tenn. App. 597, 286 S.W. (2d) 601.

### III.

First, on the question of testamentary intent, we think when the will, together with all the other evidence in the record is considered, there can be no serious doubt as to the intention of Nan Dabney Hughes to dispose of the stock contained in the envelopes in question here in the

manner indicated by her in her own handwriting and signed by her on the back of each envelope.

It is argued that Item Second of her Will is prospective in its effect because she says "It is my purpose and intention to give certain of my relatives, some of my personal property consisting of stocks and/or bonds which items I propose to allocate to each and place in envelopes bearing the name of each such relative and leave in my safety deposit box."

We must bear in mind that this is part and parcel of her last will and testament which is admittedly valid.

The above quoted section of the will might be paraphrased in the following way, without doing violence to the language used by the testator and the obvious intention expressed by her;

"It is my purpose and intention, (by this will) to give certain of my relatives some of my personal property consisting of stocks and/or bonds (which I own, and) which items I propose (by this instrument) to allocate to each and place in envelopes (on which I have written) the names of each such relative and (I will) leave (them) in my safety deposit box (to be distributed after my death)."

Of course, the personal property sought to be disposed of by the will was not, and is not the envelopes but is, rather, the shares or holdings in certain corporations, represented by the stock certificates, which property and certificates are shown to have been in existence at the time the will and/or codicil were executed.

The contestants argue that the envelopes and contents constitute incomplete inter vivos gifts, pointing out that

Item Second provides that the contents not be handled under the executorship.

On the other hand, it may be pointed out that her executor is burdened with the duty of delivering the contents to the beneficiaries named by her and to take receipts for them. He is also instructed to declare the contents for death taxes and to pay these taxes out of the residue of the estate. It is also recited in the will that these gifts are to be ''As full and complete as though set out in full herein''.

Counsel for the proponents suggest that what testatrix was saying to the executor in her will was this: ''Don't *sell* the stock in the envelopes. Deliver the stock as I direct and protect it from being sold even for taxes. Let the residue of my estate bear the taxes attributable to the stock in the envelopes.'' Thus there is nothing in the 1949 witnessed will which keeps the envelope contents from being part of her taxable estate passing under her testamentary direction.

On the question of testamentary intent it is also pointed out that the envelope which bears the name of Betty McLeod has on it the notation in the handwriting of the testatrix, ''If she predeceases me, this gift is nil''. On another envelope there is written in her handwriting ''Estate of Nan Hughes''.

We think it is reasonable to conclude that Item Second of the will of 1949 indicates that the will itself is composed of the typewritten document signed, acknowledged and witnessed, plus the envelopes in which she states certain stocks and bonds are placed and which she allocates to the beneficiaries designated on the envelopes.

· These envelopes were found in her safe deposit box, just as she stated they would be. They bore the names of her relatives, as indicated, and they contained stocks and bonds, as she stated, with a description of the contents.

From these facts and circumstances we are called on to answer the question;

*Is there any reasonable basis on which the verdict and judgment of probate of these documents, as a part of the will, can stand?*

■ In answering this question we must bear in mind that the universal rule to be applied is that the pole star in considering the will of a deceased, is the intention of the testator which is to be found and implemented if it can be done without violence to statutory law or recognized judicial authority.

■ As was held in Druen v. Hudson, 17 Tenn. App. 428, 68 S. W. (2d) 146, a will may consist of several testamentary papers construed together and writings propounded for probate constitute the will of the deceased where they show unequivocally that the writer intended them as a posthumous disposition of his estate.

In re Smith's Estate, 31 Cal. (2d) 563, 191 P. (2d) 413, 416, it was held;

"An attested testamentary instrument may refer to and incorporate another testamentary instrument executed with different statutory formalities or an informal or unattested document, so long as the reference is unmistakable or with the aid of extrinsic proof can be made so."

And in Wagner v. Clauson, 399 Ill. 403, 78 N. E. (2d) 203, 3 A. L. R. (2d) 672, it was held that a separate writing may become part of a will, if properly identified, and does not evade provisions of the statute of wills requiring an attested writing, since the separate writing is considered a part of the will, to which the attested signatures are attached.

In Dixon v. Dameron's Adm'r, 256 Ky. 722, 77 S. W. (2d) 6, a letter of testatrix to a niece and a paper which the letter said testatrix would write later were held together to constitute the will.

Also see 94 C. J. S. secs. 161, 162 and 163 and notes. In the latter section it is said;

"The testator's intention to incorporate or adopt an extrinsic paper must be determined from the language of the will read in the light of the surrounding circumstances. It is not essential that the paper referred to be itself a dispositive instrument."

On the question of intent, it is shown that the deceased, Nan Dabney Hughes, was the recipient of a bequest left her by her brother in a will which contained language identical with the language she used in Item II of her will, and a copy of that will, i. e., the will of her brother, was found in her lock box along with her own will.

Furthermore, there is in the record a letter on the letterhead of the First National Bank of Clarksville signed by C. W. Bailey, President, addressed to Miss Nan Dabney Hughes and dated January 27, 1949, just 3 days prior to the execution of her will, which letter was not allowed to be read to the jury but its material contents were put before the jury by other proof. This letter states that it

encloses a copy of the will and describes it and also calls attention to some problems in connection with Item II of the will and advises the recipient to make a list of the envelopes and the contents and to put her signature on each because ''Someone might raise a question that some envelope containing some property had not been delivered as directed''

The letter further states, ''We want to carry out your wishes but we want it done in such way that those wishes can be followed without difficulty.''

Receipt of the letter and the will was acknowledged in due course by Nan Dabney Hughes.

There is a letter in the record from Mr. Bailey to Miss Nan Hughes dated November 9, 1955, to the effect that the bank had received from General Motors Corporation certificates for 1,400 shares of common stock of that corporation, which represented a split of the stock by which she received 3 shares for 1.

He further stated that,

''It is our understanding that you want these certificates of stock distributed into the various envelopes in the safe deposit box in the same proportion that the original seven hundred shares have been distributed by you in the past.''

On the bottom of that letter Nan D. Hughes directed that the fourteen hundred shares be distributed in the envelopes in the same proportion as the seven hundred shares ''Which I now own''.

Her words ''Which I now own'' negative any idea that she considered the stock in the envelopes as gifts inter

vivos, but rather lends weight to the idea that the stocks had been put in the envelopes for the purpose of being distributed under the provisions of her will as she had previously directed.

As is said in Phillips' Pritchard on Wills, Section 232, p. 237,

"In other words, the inquiry whether the paper propounded 'appears' to be the will of the deceased is not limited to what the face of the paper discloses, but in case of doubt or conflict, all the facts and circumstances may be looked to in aid of the inquiry; and it is for the jury to determine from all the evidence, intrinsic and extrinsic, whether or not the testator intended the instrument to operate as his last will, and whether it was in fact executed as required by law, and if so, it 'appears' to be his will within the meaning of the act, and will be pronounced for accordingly."

■ Certainly, there is ample evidence to support a verdict of the jury to the effect that the testatrix intended that the envelopes and their contents be disposed of by her will as a part of her estate after her death.

In Davidson v. Gilreath, 38 Tenn. App. 291, 273 S. W. (2d) 717, 719, the Court quotes from Smith v. Smith, 33 Tenn. App. 507, 232 S. W. (2d) 338, as follows:

"If the animus testandi be doubtful, all the facts or circumstances may be looked to, and it is for the jury to determine from all the evidence, intrinsic or extrinsic, whether or not the testator intended the instrument to operate as his will." Citing Sizer's Pritchard on the Law of Wills, and Administration,

Section 232; Crutcher v. Crutcher, supra (30 Tenn. 377); Marr v. Marr, supra (39 Tenn. 303); Hopper (Hooper) v. McQuarry, supra (45 Tenn. 129); Mc-Cutcheon (McCutchen) v. Ochmig, supra (60 Tenn. 390); (R. B.) Douglass & Co. v. Harkrender, supra (62 Tenn. 114); Reagan v. Stanley, 79 Tenn. 316; Pulley v. Cartwright, 23 Tenn. App. 690, 137 S. W. (2d) 336.

■ Flanary v. Lannom, 12 Tenn. App. 236, as summarized on page 527, Vol. 15, Michie's Digest, held that there is no difference in the rule as applied to will contest cases from that in any other suits where the issues are submitted to a jury under a proper instruction from the court and the issues determined by the jury. The appellate courts in such cases do not try the case de novo. If there is any material evidence to support the jury verdict concurred in by the trial judge, it cannot be disturbed on appeal.

In Parker v. West, 29 Tenn. App. 642, 199 S. W. (2d) 928, it was held;

"On review of a judgment of the trial court based upon verdict of a jury in a will contest, all reasonable inferences must be resolved in favor of the verdict approved by trial judge and all the countervailing evidence must be discarded and the Court of Appeals will consider only whether there is any material evidence to support the verdict and judgment of the trial judge."

Since the envelopes in question do not bear any dates, we may look to the contents of the envelopes as offering some evidence as to the necessary dates. It will be seen that all the stock in question is dated prior to December

19, 1953, the date that the codicil was published, except some shares of General Motors stock which were received by the First National Bank, at Clarksville in 1955 and which represented a split of stock already owned by Miss Nan Hughes, the split being at the rate of three shares for one and which she instructed Mr. Bailey to place in the envelopes in the same proportion that the original shares had been distributed by her previously.

We do not believe that this reissue of stock which represented stock already in the envelopes should be regarded as new stock or a change in the allocation of stock.

We are of opinion that there was material evidence on which the jury could base its verdict that the envelopes and contents were in existence, at least, at the time the will was republished by the codicil of December 19, 1953.

As was announced in Scott v. Atkins, 44 Tenn. App. 353, 314 S. W. (2d) 52, and in Carver v. Anthony, 35 Tenn. App. 306, 245 S. W. (2d) 422. It was for the jury to determine from all the evidence both intrinsic and extrinsic whether or not the decedent intended the instrument to operate as a will. And again in Nicley v. Nicley, 38 Tenn. App. 472, 276 S. W. (2d) 497, it was held that an instrument although not in itself of testamentary character, may be entitled to probate where it is construed to be part of an existing instrument that is clearly of testamentary character.

It is announced by many authorities that the courts are well nigh unanimous in holding that where the language of a document is ambiguous, lending itself for as well as against testamentary intent, extrinsic or parol evidence bearing upon the writer's intention is admissible

to show the true intent. Thus, in the case at bar we think we can look to the 1949 witnessed will which was duly executed to explain the language on the envelopes and the decedent's intention with respect thereto.

Even if the contested papers are not subject to be probated as holographs we must remember that wills do not necessarily have to be perfectly self-contained and that the courts will look beyond the will itself to determine the intent of the testator.

The 1953 Codicil operated as a republishing of the will as of that date. See Phillips' Prichard on Wills, Sec. 23; Howell v. Moore, 14 Tenn. App. 594; Seilaz v. Seilaz, 24 Tenn. App. 611, 148 S. W. (2d) 23.

As to the proposition of independent significance, as applied to the envelopes and their contents, we call attention to Sec. 54.2 of Scott on Trusts, and Carver v. Anthony, 35 Tenn. App. 306, 245 S. W. (2d) 422.

It is well to observe that under Sec. 32-301 T. C. A. a will must be construed, in reference to real and personal estate, to speak and take effect as if it had been executed immediately before the death of the testator unless a contrary intention appears by the words and context.

We should also note that the common law presumption against partial intestacy, codified in Sec. 32-302, T. C. A., is applicable when the words used, by any fair interpretation, will embrace the property not otherwise devised, unless a contrary intention appears from the context. See McDonald v. Ledford, 140 Tenn. 471, 205 S. W. 312.

We have examined the assignments directed at the charge of the trial judge to the jury and find no merit in these assignments. We think the charge of the Court

was full and complete and that the issues were clearly presented and no reversible error was committed either in the charge or in the refusal of the special requests made by counsel for the contestants.

■ There is an assignment to the effect that the court committed reversible error in refusing to poll the jury at the request of counsel.

We have examined the record in this regard and are satisfied that the court did ascertain fairly the verdict of the jury as a whole and each member thereof.

As was said in Dixon Stave & Heading Co. v. Archer, 40 Tenn. App. 327, 291 S. W. (2d) 603, in the absence of a statute prescribing the method of conducting a poll of the jury, the method is entirely within the discretion of the trial judge, whose judgment will not be disturbed unless it clearly appears that there was abuse of discretion. It is further pointed out in said opinion that no particular form of answer is essential on the polling of a jury it being sufficient if the answer of the juror indicates with reasonable certainty that the verdict is his own.

In the instant case, we think the trial judge, in his discretion, did ascertain with accuracy the verdict of each member of the jury and we, therefore, overrule the assignment directed at this alleged error.

As is stated in Atkinson on Wills, Sec. 79, p. 383, separately executed instruments may constitute the testator's will, and all be admitted to probate.

Again the process of integration must be distinguished from the matter of incorporation by reference, though the two are related and somewhat overlap.

█ As was said in Howell v. Moore, 14 Tenn. App. 594, it is very generally held that a witnessed will may, by proper and sufficient reference, incorporate an extrinsic unwitnessed document.

Again, as is insisted by counsel for contestants, the doctrine of independent legal significance and receptacle gift theories, are generally matters of construction and not of probate.

█ However, as was held in Howell v. Moore, supra, whether a writing propounded and contested is or is not *prima facie* testamentary in nature is a matter for the court to determine and the Circuit Judge passed on this proposition favorably to proponents.

On the whole, we are satisfied that the true intention of the testator was ascertained in this case; that there is evidence to support the finding of facts by the jury to the effect that the envelopes in question and their contents did form a part of the testamentary disposition of property by the testator; that the essential requirements with regard to the establishment of the whole will of the deceased have been met, and that the verdict and judgment of the trial court should be affirmed.

It results that all assignments are overruled and the judgment below affirmed with costs.

Affirmed.

Hickerson and Humphreys, JJ. concur.