IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 3, 2003 Session

## STATE OF TENNESSEE v. F. CHRIS CAWOOD

**Appeal by permission from the Court of Criminal Appeals, Eastern Division**
**Circuit Court for Roane County**
**No. 12180      Buddy D. Perry, Judge**

_____

**No. E2000-02478-SC-R11-CD - Filed March 22, 2004**

_____

The controversy here concerns certain audio and videotapes which were introduced in a bench trial and marked as exhibits. Following this Court's rejection of the State's application for Rule 11 review, the Court of Criminal Appeals, on motion of the appellee, entered an order returning this evidence to the "permanent possession" of the appellee. The issue framed and briefed by the parties requires us to determine whether the Court of Criminal Appeals' order returning the tapes to the appellee was consistent with statutes and regulations applicable to the retention and disposal of such evidence.

At the threshold, however, we are confronted by an issue neither raised nor briefed by the parties: whether the Court of Criminal Appeals had subject matter jurisdiction to hear and decide the motion in the first place.[1] Upon consideration, we hold that the Court of Criminal Appeals was without subject matter jurisdiction to hear and decide the motion for the following reasons:

1.      The Supreme Court was the last court to exercise jurisdiction (prior to the motion) in its rejection of the State's Rule 11 application;

2.      The case was not remanded; and

3.      The mandate had issued.

Additionally, in response to the issue raised and briefed by the parties, we hold that Tennessee Code Annotated section 18-3-111 and Records Disposition Authorization (RDA) Number 1672, which control the disposition of the evidence at issue here, do not authorize the method of record disposition sought to be accomplished in the case under review. Accordingly, the judgment of the Court of Criminal Appeals is vacated.

---

[1]The Supreme Court has the authority to notice jurisdiction at any time. See Tenn. R. App. P. 13(b) (2003).

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Vacated**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks, Assistant Attorney General, for the appellant, State of Tennessee.

Patrick C. Cooley, Kingston, Tennessee, for the appellee, F. Chris Cawood.


**OPINION**

I.  Facts and Procedural History

The appellee, F. Chris Cawood, an attorney, was convicted of two counts of attempting to patronize prostitution.  The convicting evidence included a single videotape and two audiotapes of Cawood's conduct and speech.  Unbeknownst to Cawood, these tapes were made by a witness at the direction of investigators.  The tapes were introduced as evidence in Cawood's bench trial, and they were marked and accepted as trial exhibits.

Cawood appealed the conviction, contending not only that the evidence was insufficient to support the convictions but also, inter alia, that the trial court erred by denying his motion, based on Tennessee Code Annotated section 40-6-304(f)(1) (2003),[2] to seal the audio and video evidence in the case.  The Court of Criminal Appeals, concluding that the evidence was insufficient and that the police had engaged in outrageous conduct, reversed the convictions and dismissed the charges. Additionally, the Court of Criminal Appeals found Cawood's motion regarding the sealing of the videotape and audiotapes to be without merit because section 40-6-304(f)(1) did not apply.  The State applied for permission to appeal to this Court.  The application was denied on September 9, 2002, and the opinion of the Court of Criminal Appeals was designated as "Not for Citation."

Cawood next filed a "Motion for Withdrawal of Part of Record" on October 18, 2002, in the Tennessee Supreme Court seeking possession of the tapes, which were then a part of the record in the Supreme Court.  The Appellate Court Clerk[3] referred the motion to the Court of Criminal Appeals rather than to the Supreme Court.  Ruling on the motion, Judge James Curwood Witt, Jr.,

---

[2]Tennessee Code Annotated section 40-6-304(f)(1), which deals with wiretapping and electronic surveillance, provides: "All recordings of wire, oral, or electronic communications shall be treated as confidential and shall not be open for inspection by members of the public.  Custody of the recordings shall be wherever the judge orders."

[3]According to Tennessee Code Annotated section 16-4-106 (2003), "[t]he clerks and marshals of the Supreme Court shall also be the clerks and marshals of the Court of Appeals . . . ."  Therefore, "Appellate Court Clerk" and "Supreme Court Clerk" refer to the same person.

of the Court of Criminal Appeals, ordered that Cawood may take "permanent possession" of the exhibits that are the subject of this appeal. The State filed a motion to reconsider, and a panel of the Court of Criminal Appeals affirmed the order. Upon the State's motion, the Court of Criminal Appeals stayed the order. The exhibits are now properly in the possession of the Supreme Court.

Pursuant to the State's application under Rule 11 of the Tennessee Rules of Appellate Procedure, we granted review to determine whether the Court of Criminal Appeals' order was consistent with the applicable statutes and regulations regarding retention and disposal of trial exhibits. As a threshold matter, however, we must consider whether the Court of Criminal Appeals had jurisdiction to rule on Cawood's post-mandate motion in the first place.[4]

## II. Standard of Review

Subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000). A determination of whether subject matter jurisdiction exists is a question of law; therefore, our standard of review is de novo without a presumption of correctness. Id. The same standard of review applies regarding the appropriate protocol for retention and disposal of records. See State v. Williams, 38 S.W.3d 532, 535 (Tenn. 2001) (indicating that the construction of statutes and the application of the law to the facts is a question of law).

## III. Analysis

The initial issue raised by the parties is whether the tapes are public records. Obviously, if they are not public records, they are not to be retained by the Court and our analysis ends. If, however, they are public records, we must determine their retention and disposal. Tangential to this issue, we must determine whether Cawood has a privacy interest sufficient to override applicable statutes and rules regarding retention and disposal. Before addressing those issues, however, we must first determine which forum had jurisdiction to rule on the defendant's post-mandate motion. Only then can we resolve the issue of what is the applicable statute governing the retention and disposal of records in this case and the corollary claims.

## A. Jurisdiction

The crucial preliminary issue is whether the Court of Criminal Appeals had subject matter jurisdiction over Cawood's motion to withdraw evidence. As stated above, subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it. Northland Ins. Co. v. State, 33 S.W.3d 727, 729 (Tenn. 2000). Subject matter jurisdiction involves the nature of the cause of action and the relief sought, and can only be conferred on a court by

---

[4]Neither party raised the argument that the Court of Criminal Appeals did not have jurisdiction to rule on the defendant's motion. However, Tennessee Rule of Appellate Procedure 13(b) (2003) indicates that an appellate court "shall consider whether the . . . appellate court [has] jurisdiction over the subject matter, whether or not presented for review . . . ."

legislative or constitutional act.  Id.  "Jurisdiction carries with it power to determine every issue or question properly arising in the case."  Stinson v. State, 344 S.W.2d 369, 373 (Tenn. 1961) (quoting Carver v. Anthony, 245 S.W.2d 422, 424 (Tenn. Ct. App. 1951)).  In order to determine if a court has jurisdiction, we consider "whether or not it had the power to enter upon the inquiry; not whether its conclusion in the course of it was right or wrong."  Id. (quoting Aladdin Indus., Inc. v. Associated Transp., Inc., 323 S.W.2d 222, 229 (Tenn. Ct. App. 1958)).

Cawood filed his "Motion for Withdrawal of Part of Record" under the Supreme Court Rule 11 docket number with the Appellate Court Clerk in Knoxville.  As indicated on the heading, this motion was addressed to the Supreme Court.  In the motion, Cawood requested that "he be allowed to have possession of all copies of the videotape and audiotapes now in the record of the Supreme Court."[5]  The Appellate Court Clerk, however, directed the motion to the Court of Criminal Appeals.  The Court of Criminal Appeals did not have "possession" of the evidence at issue; instead, at the time Cawood filed his motion, the tapes were in the possession of the Clerk of the Supreme Court, inasmuch as the Supreme Court was the last forum to exercise jurisdiction in the case.[6]  Therefore, absent a remand or other enabling circumstance, the Supreme Court was the only authority which should properly exercise control over the tapes.  See State v. Arnold, No. E2001-00618-CCA-R3-CD, 2002 WL 111306, at *2 (Tenn. Crim. App. Jan. 29, 2002) (indicating that "as a practical matter . . . filing a record, including the exhibits, with an appellate court brings the exhibits within the jurisdiction of the appellate court . . . .  [T]he authorization for the return [of the records] would have to come from the appellate court."); see also Ray v. State, No. M1999-00237-COA-R3-CV, 2000 WL 388718, at *4 (Tenn. Ct. App. Apr. 18, 2000) (holding that "the proper forum in which to seek return of the subject property is the court having custody of that property").

Accordingly, although neither party raised the jurisdictional issue, we hold that the Supreme Court, not the Court of Criminal Appeals, was the proper forum to decide Cawood's motion to take permanent possession of the evidence.

---

[5]Tennessee Rule of Appellate Procedure 24(a) discusses the contents of the record on appeal as including the original exhibits filed in the trial court.

[6]Even when the Supreme Court denies a writ of certiorari, the Court takes jurisdiction and makes a final disposition of the case by approving the final decree of the intermediate court.  Pairamore v. Pairamore, 547 S.W.2d 545, 548 (Tenn. 1977).  This exercise of the Court's jurisdiction does not deprive the intermediate appellate court of authority to perform pursuant to Tennessee Rule of Appellate Procedure 42(b) the ministerial act of issuing a mandate of its opinion immediately upon the filing of the order of this Court denying the application for permission to appeal.  See 5 Am. Jur. 2d Appellate Review § 777 (describing issuance of mandate as ministerial act).  Even after the intermediate appellate court has lost plenary jurisdiction, it retains express authority to perform certain acts.  See, e.g., Tenn. R. App. P. 8(c) (fixing terms and conditions of bond pending filing and disposition of application for permission to appeal); Tenn. R. App. P. 42(a) (taxing of costs); Tenn. R. App. P. 42(b), (c) (staying of mandate); Tenn. R. App. P. 42(d) (recalling of mandate); Tenn R. Sup. Ct. 13 (reviewing of fee claims).  In addition, the intermediate appellate court has implicit authority to perform ministerial acts, such as ordering withdrawal of the record, provided such order does not alter the composition of the record.

-4-

B.  Public Records

We realize full well that our holding regarding jurisdiction effectively closes the controversy. The remaining issues raised are, however, of significant interest to the bench, bar, and public alike. For that reason, we elect to address the issues raised and briefed by the parties.

The appellant contends that the tapes are "public records" as defined by the Public Records Act, sections 10-7-501 to -509 (1999 & Supp. 2003).  Tennessee Code Annotated section 10-7-503(a) (Supp. 2003) mandates that "all state, county and municipal records . . . shall at all times, during business hours, be open for personal inspection by any citizen of Tennessee, and those in charge of such records shall not refuse such right of inspection to any citizen, unless otherwise provided by state law."  The legislature has indicated that the Act "shall be broadly construed so as to give the fullest possible public access to public records." Tenn. Code Ann. § 10-7-505(d) (1999); Tennessean v. Elec. Power Bd. of Nashville, 979 S.W.2d 297, 301 (Tenn. 1998).  This statutory right extends to those public records, as defined by Tennessee Code Annotated section 10-7-301(6) (2003), maintained by the Clerk of the Appellate Courts unless the record has been submitted under seal or is the subject of a protective order.  Tenn. Sup. Ct. R. 34(1)-(2)(A) (2003).  According to Tennessee Code Annotated section 10-7-301(6):

> "Public record or records" or "state record or records" means all documents, papers, letters, maps, books, photographs, microfilms, electronic data processing files and output, films, sound recordings, or other material, regardless of physical form or characteristics made or received pursuant to law or ordinance or in connection with the transaction of official business by any governmental agency.[7]

If an item meets the criteria set forth in sections 10-7-301(6) and 10-7-503, and is not within the enumerated categories of confidential records in section 10-7-504, then the documents are presumed to be open to the public.  See Memphis Publ'g Co. v. City of Memphis, 871 S.W.2d 681, 684 (Tenn. 1994) (indicating that the public's right to access records of governmental entities is very broad such that it creates a "presumption of openness").  If the government does not disclose records, then the justification for nondisclosure must be shown by a preponderance of the evidence.  Tenn. Code Ann. § 10-7-505(c) (1999); see Coats v. Smyrna/Rutherford County Airport Auth., No. M2000-00234-COA-R3-CV, 2001 WL 1589117, at *3 (Tenn. Ct. App. Dec. 13, 2001).

Thus, in order for the tapes to be considered a "public record," the initial test is whether they

---

[7]In Memphis Publishing Co. v. Cherokee Children & Family Services, Inc., 87 S.W.3d 67, 75 (Tenn. 2002), our Court recognized that this definition of "public records" in Part 3 of the Public Records Act provides "imperfect guidance" in defining the "records" mentioned in Part 5, section 10-7-503, because the section 10-7-301(6) definition does not expressly apply to other parts of the Public Records Act.  However, the Court adopted the definition of "public record" provided in section 10-7-301(6) for "records" in section 10-7-503.  See id. at 75, 79; see also Griffin v. City of Knoxville, 821 S.W.2d 921, 923 (Tenn. 1991) (relying on Tennessee Code Annotated section 10-7-301(6) for a definition of "public record" in section 10-7-503).

were made or received pursuant to law or in connection with official governmental business.[8] Griffin v. City of Knoxville, 821 S.W.2d 921, 924 (Tenn. 1991). The audiotapes and videotape of Cawood were submitted as evidence during a trial and were entered as exhibits.[9] Evidence, in general, is deemed to be a "public record." See id. at 923-24 (implying that public records encompass evidence). Furthermore, the videotape and audiotapes at issue in this case do not fall within the enumerated list of confidential records in section 10-7-504. Consequently, these records are "public records" for purposes of the Public Records Act and should be treated as such unless they are placed under seal or are subject to a protective order. See Tenn. Code Ann. § 10-7-503; Tenn. Sup. Ct. R. 34.

### C. Disposal of Public Records

Having established that the tapes are "public records," we must determine what statute governs the retention and, more important, the disposal of the records. Section 10-7-503 of the Public Records Act only provides for inspection of the records because the records must stay in the custody and control of the clerk.[10] See Tenn. Code Ann. § 10-7-503(a); Tenn. Sup. Ct. R. 34; Tenn. R. App. Ct. 5 (2003). However, Cawood seeks permanent possession of the tapes by withdrawing them from the record, which is, assuredly, a form of disposal.

The State contends that if exhibits are removed from the public record, they must be disposed of in accordance with Tennessee Code Annotated sections 18-1-201 to -206 (1994 & Supp. 2003). In particular, the State suggests that Tennessee Code Annotated section 18-1-206 (1994), which provides the procedure for the disposal of physical evidence, applies. The State contends this procedure was not followed; Cawood asserts the procedure was followed.

Section 18-1-206, however, does not apply in this case. Section 18-1-206 is under the "General Provisions" chapter of Title 18, Clerks of the Court. On the other hand, chapter three of Title 18 provides specific direction for "Supreme Court Clerks." In particular, Tennessee Code Annotated section 18-3-111 (1994) provides: "The clerk of the supreme court shall dispose of or preserve old dockets, old transcripts, old records, or any other books, documents, papers, etc., as directed by the chief justice of the supreme court in accordance with the records retention plan promulgated by the supreme court." Moreover, Tennessee Code Annotated section 10-7-509(a) (1999) of the Public Records Act also refers to records disposition plans in that it mandates: "The disposition of all state records shall occur only through the process of an approved records disposition authorization."

---

[8]The "records" at issue are two audiotapes and one videotape, all of which clearly fall within the large category of material specified above in section 10-7-301(6).

[9]Traditional public records are those records filed with a court. Memphis Publ'g Co. v. City of Memphis, 871 S.W.2d at 687.

[10]Tennessee Rule of Appellate Procedure 25(c) (2003) provides the only exception to this general rule in that the clerk must make records available to an attorney for the purpose of preparing appellate papers.

We take judicial notice that the pertinent records disposition authorization (RDA) that provides direction for the Supreme Court Clerk regarding disposition of records is RDA Number1672, approved March 21, 1990. In particular, this document indicates that records comprised of Criminal Cases reviewed by the Supreme Court of Tennessee "are to be maintained in the Supreme Court offices while they are active, afterwards they are to be transferred to the state Records Center to be held an additional fifty years (50)." RDA No. 1672, attach. #15. Upon the expiration of the retention period, records of historic value may be retained by the State Library and Archives, and records of non-historic value may be disposed of "with approved methods." Id. Therefore, it is clear that the return of the records to the appellee is neither authorized nor contemplated.

### D. Constitutional and Privacy Claims

Although we have determined that the tapes are public records in the control of the Supreme Court Clerk, we will briefly address Cawood's constitutional and privacy interest claims. Cawood first claims that he is entitled to permanent possession of the tapes because he has a privacy interest in the tapes created by the wiretapping and surveillance statutes. See Tenn. Code Ann. §§ 39-13-601 to -604 (1997 & Supp. 2002), 40-6-301 to -311 (2003). However, this claim is without merit because any limitations imposed on the use of intercepted communications do not apply to evidence admitted at trial and which ultimately becomes part of the appellate record. See Tenn. Code Ann. §§ 40-6-306, -307 (2003).

Second, Cawood asserts that because the tapes depict him engaged in sexual conduct in a private place and were recorded by a state agent without his permission, leaving those tapes in the possession of the Clerk would violate his fundamental right to privacy, especially because his convictions were vacated. For support, he cites to the test used in J.P. v. DeSanti, 653 F.2d 1080, 1088-91 (6th Cir. 1981), to determine when state-authorized or mandated public disclosure of private information triggers constitutional protection: (1) whether a fundamental right is at issue, and if so, (2) whether the government's interest in the disclosure of the information outweighs the individual's privacy interest. See Bloch v. Ribar, 156 F.3d 673, 684-87 (6th Cir. 1998) (applying the test in DeSanti to the government's release of sensitive details of a rape). The State responds that neither this Court nor the United States Supreme Court has recognized that an individual's informational right to privacy supersedes the State's right to maintain information on matters of public interest. See generally Nixon v. Adm'r of Gen. Servs., 433 U.S. 425 (1977); Paul v. Davis, 424 U.S. 693 (1976).

We agree with the State. While we acknowledge that "the notion of individual liberty is . . . deeply embedded in the Tennessee Constitution" and "that there is a right of individual privacy guaranteed under and protected by the liberty clauses of the Tennessee Declaration of Rights," Doe v. Sundquist, 2 S.W.3d 919, 925 (Tenn. 1999) (quoting Davis v. Davis, 842 S.W.2d 588, 599, 600 (Tenn. 1992)), the legislature has recognized through the Public Records Act that the State has a compelling need to maintain public records, including those relating to criminal prosecutions and appeals. See Tenn. Code Ann. § 10-7-503 (Supp. 2003); see also Griffin, 821 S.W.2d at 923-24. Furthermore, this Court has held that the confidentiality of records is a statutory matter that is best

left to the legislature.  See Sundquist, 2 S.W.3d at 926.

The Public Records Act reflects the legislature's effort to create legislation that advances the best interests of the public.  Cf. id. at 925 (finding that the legislation allowing the disclosure of sealed adoption records to adopted persons over age twenty-one does not impair plaintiffs' constitutional rights to privacy and reflects the legislature's view that disclosure of records is in the best interest of the public).  The trend is towards a policy of openness with respect to state records, and this trend is reflected in the legislative directive to provide "the fullest possible public access to public records."  Tenn. Code Ann. § 10-7-505(d) (1999).  Were we to grant Cawood's motion, the public would no longer have "the fullest possible" access to the records.  Previously, this Court declined an invitation to create a public policy exception[11] to the Public Records Act, declaring that "[i]t is the prerogative of the legislature to declare the policy of the State touching the general welfare.  And where the legislature speaks upon a particular subject, its utterance is the public policy . . . upon that subject."  Tennessean, 979 S.W.2d at 301; see also Memphis Publ'g Co. v. City of Memphis, 871 S.W.2d at 685-86 (stating that the legislature's mandate is clear that it alone has the power to make public policy exceptions to section 10-7-503, and any exception must be supported by specific authority).  Therefore, this Court declines to make a public policy exception for the records at issue in this case because it is within the prerogative of the legislature to do so.

## IV.  Conclusion

For the foregoing reasons, we hold that the audiotapes and videotape entered as exhibits during the trial are public records in the control of the Clerk of the Supreme Court.  There they shall remain unless disposed of in accordance with RDA 1672 or other applicable law.  Costs on appeal are taxed to F. Chris Cawood and his surety, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE

---

[11]It is worth noting that the courts have the ability to protect an individual's privacy interest in public records since access to records can be controlled by the court if necessary.  See Tenn. Sup. Ct. R. 34(1)-(2)(A).