IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 15, 2008 Session

## ELIZABETH DIAZ GRAHAM v. CHRISTOPHER SCOTT GRAHAM

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-00-082      Hon. John B. Hagler, Jr., Circuit Judge**

**No. E2008-00180-COA-R3-CV  - FILED JANUARY 26, 2009**

The parties to this action were divorced in Bradley County, Tennessee, and the mother then moved to Florida with the children as the custodial parent under the agreed Parenting Plan. The father brought this action, charging the mother with contempt of court and petitioned the Court to modify the existing Parenting Plan by awarding the father custody of the minor children. Among the defenses raised by the mother was the lack of subject matter jurisdiction in this State, but the Trial Judge held that courts in Tennessee had subject matter jurisdiction over the issues in dispute. On appeal, we reverse on the basis that the courts of Tennessee do not have subject matter jurisdiction over the issues, and remand for transfer of the matter to the appropriate Florida court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

James F. Logan, Jr., Cleveland, Tennessee, for appellant, Elizabeth Diaz Graham.

William J. Brown, Cleveland, Tennessee, for appellee, Christopher Scott Graham.

**OPINION**

This appeal arises from a dispute over the implementation of a permanent parenting plan and a petition for modification of the permanent parenting plan and change of the primary residential parent which was filed in the Circuit Court for Bradley County.

Prior to this action, a modification of the permanent parenting plan had been made by the trial court and that judgement was appealed to this Court and reversed. *Graham v. Graham*, No. E2004-02247-COA-R3-CV, 2005 WL 1467878 (Tenn. Ct. App. Jun. 22, 2005). (Graham I). The factual recitation from that appeal sets the stage for the issues now before us, and we quote from that opinion for the relevant facts.

Elizabeth Diaz (Graham) Lewis ( Mother/Appellant) and Christopher Scott Graham (Father/Appellee) were married in June of 1993 and they have two daughters, Alexis Elizabeth Graham, now thirteen, and Natalie Taylor Graham, now nine. The parties separated in January of 2000 and the mother and the two children moved to Georgia in early 2000. The mother filed a complaint for divorce shortly thereafter alleging that the father was guilty of inappropriate marital conduct or, in the alternative, that irreconcilable differences had arisen between the parties. The mother sought, among other things, to be designated the primary residential parent for the two children. The father answered the complaint and filed a counter-complaint seeking a divorce from the mother based on allegations of inappropriate marital conduct and inhumane treatment. The father likewise sought to be designated as the children's primary residential parent. The trial was in March of 2001 and the trial court granted a divorce to both parties but finding that the father was guilty of greater fault than the mother. The trial court specifically sanctioned the mother's move to Georgia to be with her mother and stated that the move was reasonable and not for the purpose of being vindictive and the children had suffered no harm. The trial court noted that, in fact, the father had more than standard visitation with the assistance of the mother. The trial court adopted the Parenting Plan submitted by the mother and the mother was to remain the primary residential parent and primary caretaker. The father's child support payment originally was set at $107.00 per week. However, the trial court stated that the amount would be reviewed in six months and "increased as the court believed that the father was significantly underemployed." In accord with this ruling, the father's child support payment later was increased to $150.00 per week beginning in September of 2001. *Graham I* at *1.

In June of 2004, the mother abruptly moved to Jacksonville, Florida with the children, without first notifying Father. *Id.* at * 1. The mother and Jason Lewis had married just before the move to Florida. *Id.* at * 3. The father filed a petition in the Bradley County Circuit Court objecting to Mother's relocation and, citing a material change of circumstances, asked to be named primary residential parent instead of the mother. *Id*. at * 1 - 2). Following a hearing, the trial court concluded that Tenn. Code Ann. § 36-6-108 applied, that the mother had no reasonable purpose for relocating to Florida and that the mother's motivation was vindictive and with intent to defeat the father's visitation rights. The trial court held that if she did not return to Georgia, the move would be deemed a material change in circumstances and that it would be in the best interest of the children for the father to be designated as the primary residential parent. The mother informed the court that she would not return to Georgia and the trial court entered an order in favor of the father. *Id*. at * 3 - 4. The mother appealed and this Court concluded that the preponderance of the evidence weighed against the trial court's conclusion that it would be in the best interest of the children for the father to be designated as the primary residential parent and reversed the trial court on that issue,

holding that the mother would remain the primary residential parent. *Id*. at *1, 7.

In making its custody determination, this Court utilized the factors set forth in Tenn. Code Ann. § 36-6-108(e)(1)-(11) and applied the following findings of fact made by the trial court: (1) The mother had been very cooperative in allowing the father visitation and the move to Florida would not change that situation. (2) There was equal love, affection and emotional ties between the mother and the children and the father and the children. (3) The mother has provided the children with appropriate food, clothing and medical care, but the father had difficulty maintaining employment and his "economic situation" as relates to child support was a concern to the trial court. (4) The father would provide more stability to the children than the mother. This Court disagreed with finding (4) based on evidence that the mother's new apartment was more than adequate for raising children, while the father presented no evidence regarding his living conditions and that the father's ability to provide a stable environment was questionable as he was $4,500.00 in arrears for child support payments. (5) The issue this Court considered was the finding by the trial court that the children were "thriving" while attending school in Georgia. This Court noted that there was no evidence presented that the girls would not thrive as well in a Florida School. *Id* at * 6 - 7).

Following the reversal of the Trial Court's judgment for modification of the Parenting Plan, the parties entered into a new Permanent Parenting Plan, filed on October 27, 2005, which is part of this record. Significant to the issues that arose after the first appeal, are the provisions in the Plan that the mother is the primary residential parent and that the girls would spend approximately 280 days a year with her and that the father would have approximately 85 visitation days a year. Further, pursuant to the Parenting Plan, the parties agreed that should they disagree about the Parenting Plan or wish to modify it, they must make a good faith effort to resolve the issue by mediation before returning to the Court. The Parenting Plan also provided a schedule for telephone contact between the children and the parents and provided for responsibilities each parent bore regarding these telephone calls. In addition, the Plan provided the mother would send appropriate casual and church clothing with the children when they visited the father.[1]

On June 2, 2006 the father filed a Petition for Contempt and to Modify and Enforce in the Circuit Court for Bradley County wherein the father alleged the mother was not complying with the provisions of the Parenting Plan regarding his telephone contact with the children. He also complained that the mother's "new husband" was interfering with the father's attempts to communicate with the mother regarding the telephone call issue and that the mother often refused to discussed the issue with the father.

The Petition further states that because Natalie was having academic problems as a first grader, the father had made arrangements for her to attend tutoring during the summer.

---

[1]The Parenting Plan was filed in October 2005, and was signed by the mother's counsel.

Although the mother's attorney had communicated orally to the father's attorney that the mother would share the tutoring expenses, the father had not received a written agreement as his counsel had requested. The father also asked the Court to order the mother to share equally in the cost of testing and tutoring and also to allow the father to have Natalie psychologically evaluated to determine whether any other educational problems were present.

The father also alleged that because the mother took the children on a trip to Texas without notification to him as required by Tenn. Code Ann. § 36-6-101, she should be punished for contempt. He alleged that the mother has also violated the provisions of the Parenting Plan by not allowing the father to have visitation with the children when he was in Florida, despite his providing 72 hour notice to the mother. The father also asked for a modification of the Parenting Plan regarding the clothing the mother sent with the children when they visit the father. Notably, there is no averment that the parties sought to resolve these issues through mediation as required by the Parenting Plan.

In response to the father's petition, the mother filed a "Motions, Answer to the Petition for Contempt and to Modify and Enforce and Counter-Petition" on June 16, 2006. Under the subtitle "Motions" the mother set forth the allegation that "[t]his Court is without jurisdiction over this matter. The home state of the minor children is the State of Florida" and asked for a dismissal based on lack of jurisdiction. Also under the subtitle "Motions" the mother asserted that as service of process on her was improper, the cause should be dismissed. She set forth the argument that the forum of Bradley County, Tennessee was an inconvenient forum as all of the witnesses necessary for the proceeding were located in Florida and that the cost of either bringing the witnesses before the Bradley County Court or to secure their deposition testimony would be "exorbitant and unreasonable," and she requested that the issues be transferred to a court in Florida. Further, she argued that the Petition is "untimely and barred" by prior orders of the Court as the father did not attempt to mediate the issues raised in the Petition before bringing the issues to the Court as required by the Parenting Plan.

On January 2, 2007 counsel for the father obtained permission to withdraw, and the father then filed a Petition For Modification of the Permanent Parenting Plan, Change of Primary Residential Parent and Contempt, and charged that there had been a material change of circumstances that justified a reconsideration of the children's best interest and warranted a modification in the Permanent Parenting Plan declaring the father to be the Primary Residential Parent. The Petition does not state that the parties attempted to mediate these issues pursuant to the Permanent Parenting Plan and the record does not show that the father filed and served a proposed parenting plan as required by Tenn. Code Ann. § 36-6-405. [2]

---

[2] Tenn. Code Ann. § 36-6-405 provides that [i]n a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification.

In the mother's Response to the Petition, she again stated: (1) that the court had no subject matter jurisdiction as Tennessee is not the home state of the children; (2) that the Petition fails to state a claim upon which relief can be granted; (3) that the Petition is barred as there is a prior suit pending between the parties; (4) that Tennessee is an inconvenient forum and ; (5) the Petitioner is barred by the doctrine of equitable estoppel and by the doctrine of contempt. She specifically denied the allegations contained in the Petition and asked for other relief.

The matter was tried before the Court on July 27, 2007 before the Trial Court. The Trial Court denied the mother's motions to dismiss for lack of subject matter jurisdiction and for inconvenient forum at the outset of the trial but delayed the mother's motion to dismiss based on failure to mediate. At the conclusion of the hearing the Trial Judge overruled the motion on failure to mediate and stated that, although he would have ordered mediation if one of the parties had brought the issue to his attention before the morning of trial. He waived the requirement of mediation. The remaining issues were taken under advisement by the Court.

On November 2, 2007 the Court issued a Memorandum Opinion, briefly recapping the two prior trials and their outcomes, and characterized the issues at the July 2007 trial as involving the life of the mother and the children in Jacksonville and the claims made by the mother of violence and abuse against her and the children on the part of Jason Lewis and Mr. Lewis' claims against her of violence and abuse against the children. The Court noted that Lewis was the mother's now estranged husband, and found his testimony credible as to his testimony that the mother was involved in an extra-marital affair with a married lawyer.

The Trial Court concluded that the mother's conduct constituted a material change of circumstances and ordered a change in custody.

On December 20, 2007, the mother filed a Motion for New Trial and/or to Alter or Amend Judgment. The Trial Court entered a Final Judgment on December 21, 2007 as follows:

1. The mother's motions to dismiss for lack of jurisdiction, forum non-convenes and failure to request mediation were denied.

2. The father was designated the primary residential parent. The Permanent Parenting Plan entered by the Court on December 5, 2007 is incorporated in the order and effective December 28, 2007.

3. The mother will pay child support of $807.00 as of February 1, 2008.

-5-

4.   The entry of this order shall not bar the parties mediating the terms of the parenting plan.

5.   The order is a final judgment pursuant to Tenn. R. Civ. P. 54.02.

The mother's motion for new trial was denied and the mother's motion to stay changing custody of the children pending appeal was granted on December 21, 2007.

We conclude, as hereinafter explained, that the Trial Court erred when it did not dismiss this case for lack of subject matter jurisdiction, and the only facts that are pertinent to this issue will be outlined.

The record demonstrates that the Graham children no longer have a "significant connection" with the state of Tennessee and that substantial evidence is not available in this State concerning the children's care, protection, training, and personal relationships.   The children have not lived in Tennessee since early 2000 when they moved from Tennessee to Atlanta, Georgia with their mother.  Since that time, the mother has been the primary residential parent and the girls have spent approximately 280 days a year with her and the father would have approximately 85 days a year visitation.[3]   While there was testimony that the children were in Tennessee for more than a month during the summer of 2006 and for ten to twelve days over the winter holidays in 2006 there was also testimony that the father traveled to Jacksonville, Florida to visit with the girls.  There was no evidence nor any claims made that the children's residence was not Florida.  The children had lived with their mother and her husband in the same neighborhood in Jacksonville for a number of years and had friends in the neighborhood.  Both girls attended school in Jacksonville and there was no evidence that they ever attended school in Tennessee.  When Natalie required tutoring in reading during the summer between first and second grade, she attended the Sylvan Leaning Center for tutoring in both Florida and Tennessee. With the exception of the summer tutoring in Tennessee, all of the girls' teachers were located in Florida.  The children attended church in Florida and Natalie was baptized, after discussing the matter with her minister, at the Florida church.  The evidence established that the children participated in soccer, gymnastics and cheerleading in Florida and that Alexis had participated in several talent shows at her Florida School.  The children's physicians were located in Florida. Natalie, who suffers from alopecia[4], was evaluated for this condition by a Florida based pediatric dermatologist.  All of the evidence offered regarding the alleged "material change

---

[3] The 280 days attributed to Mother and 85 days attributed to Father is in accordance with the Permanent Parenting Plan.  Neither party claimed that the other parent had not abided by the Plan as to the number of visitation days due Father.

[4]Hair loss.

in circumstances" and the "best interests of the children" concerned events and relationships that took place in Florida.

We pretermit the issues raised on appeal.

Tennessee's version of the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is codified at Tennessee Code Annotated sections 36-6-201 to 243 (2001) and governs jurisdiction between Tennessee and other states over child custody proceedings. Whether a court has jurisdiction under this act is a question of law, thus we review the issue *de novo* with no presumption of the correctness of the ruling of the lower court. *Staats v. McKinnon,* 206 S.W.3d 541 at 542 (Tenn. Ct. App.2006); *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006)(citing *State v. Cawood,* 134 S.W.3d 159, 163 (Tenn.2004)).

A court must have jurisdiction over the subject matter of the proceeding as well as over the parties**.** *State ex rel. Whitehead v. Thompson,* No. 01A01-9511-CH-00538, 1997 WL 749465 at *2 (Tenn. Ct. App. Dec.5, 1997). The question of subject matter jurisdiction relates to a court's power to adjudicate a particular type of controversy. *Toms v. Toms,* 98 S.W.3d 140, 143 (Tenn.2003); *Northland Ins. Co. v. State,* 33 S.W.3d 727, 729 (Tenn.2000). Subject matter jurisdiction "relates to the nature of the cause of action and the relief sought" and "is generally defined by the constitution or statute and conferred by the authority that organizes the courts." *Meighan v. U.S. Sprint Communications Co.,* 924 S.W.2d 632, 639 (Tenn.1996); *Kane v. Kane,* 547 S.W.2d 559, 560 (Tenn.1977). The parties cannot confer subject matter jurisdiction on a court by either appearance, plea, consent, silence, or waiver. *Dishmon v. Shelby State Cmty. Coll.,* 15 S.W.3d 477, 480 (Tenn. Ct. App.1999). A court cannot enter a valid, enforceable order without subject matter jurisdiction. *Brown v. Brown,* 198 Tenn. 600, 610, 281 S.W.2d 492, 497 (1955); *SunTrust Bank v. Johnson,* 46 S.W.3d 216, 221 (Tenn. Ct. App.2000). Accordingly, when subject matter jurisdiction is questioned the court must first determine the nature of the case and then ascertain whether the Tennessee Constitution, the General Assembly, or the common law have conferred on it the power to adjudicate its cases. *Staats v. McKinnon,* 206 S.W.3d 541 at 542 (Tenn. Ct. App.2006). Subject matter jurisdiction may be raised at any time by the parties or by the appellate court *sua sponte* on appeal. *County of Shelby v. City of Memphis,* 211 Tenn. 410, 365 S.W.2d 291 (Tenn.1963).

Although the mother moved the Trial Court to dismiss the father's petition to modify the Permanent Parenting Plan based on a lack of subject matter jurisdiction, this was not included in her issues on appeal. However, this Court can raise the issue of lack of subject matter jurisdiction *sua sponte* and we find that because there is a lack of a significant connection between the mother and the children and the state of Tennessee, substantial evidence is no longer available in this State concerning the children's care, protection, training, and personal relationships the Trial Court did not have subject matter jurisdiction, and its Judgment is void.

The issue before the Court concerns the father's petition for modification of the Permanent Parenting Plan to name him, rather than the mother, as the primary residential parent of the two children. The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), enacted on June 14, 1999, authorizes Tennessee courts, under certain circumstances, to exercise continuing jurisdiction to modify decrees even though another state has become the home state[5] of the child. The UCCJEA provides that a Tennessee court has continuing jurisdiction over a child custody matter until:

(1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

(2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code Ann. §36-6-217(a).

According to the official comments to the UCCJEA[6], subsection (1) of the statute

_____

[5] Tenn. Code. Ann. § 36-6-205(7) provides the definition of "Home state" under the UCCJEA as meaning the state in which a child lived with a parent or a person acting as a parent for at least six (6) consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than six (6) months of age, "home state" means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period . . .

[6] Tenn. Code Ann. § 36-6-203 provides authority for courts to rely on the official comments: " In any dispute as to the proper construction of one (1) or more sections of this part, the official comments pertaining to the corresponding sections of the Uniform Child Custody Jurisdiction and Enforcement Act, Official Text, as adopted by the National Conference of Commissioners on Uniform State Laws as in effect on June 14, 1999, shall constitute evidence of the purposes and policies underlying such sections . . .

means that even if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, as long as the general requisites of the "substantial connection" jurisdiction provisions . . . are met. However, if the relationship between the child and the parent remaining in the state with exclusive, continuing jurisdiction "becomes so attenuated that the court could no longer find significant connections and substantial evidence", jurisdiction by that state's courts would cease to exist. The comments go on to explain that "[t]he use of the phrase "a court of this state" under subsection (a)(1) makes it clear that the original decree state is the sole determinant of whether jurisdiction continues." Accordingly, a party seeking to modify a custody determination must obtain an order from the original decree state stating that it no longer has jurisdiction. Tenn. Code Ann. § 36-6-217 Cmt. 1, 2.

The issue then becomes whether the children have significant connections to Tennessee and whether there is substantial evidence in Tennessee regarding the custody determination to justify a finding of exclusive, continuing jurisdiction by the Tennessee courts or has the children's relationship with Tennessee become so "attenuated" that the court could no longer find a significant connection to the state or that substantial evidence could be found in Tennessee regarding the alleged material change in circumstances.

In *Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107 (Tenn. Ct. App. Dec. 20, 2004) we considered whether Tennessee had subject matter jurisdiction over a father's petition to modify custody. The child was born in Tennessee in 1994 where the parents resided but was taken to California to live in September 1996 and remained there with his mother through the time of the appeal in 2004. In December 1996 the mother filed for divorce in Tennessee and the initial custody order in favor of the mother was issued by the Tennessee court. In 2001 the father filed a petition for a change of custody in that court. *Lee* at * 1. The trial court ruled that it did not have continuing jurisdiction over the custody and visitation decisions involving the child and held that the custody matter should be transferred to California and the father appealed. *Lee* at * 3

Because the initial custody determination was issued by a Tennessee court, the appellate court looked to Tenn. Code. Ann. § 36-6-217 to determine if the trial court did or did not have subject matter jurisdiction to entertain the petition to modify custody. The Court stated that as the father still resided in Tennessee, determination of jurisdiction must necessarily rest upon subsection (a)(1) of that statute. The Court considered the statutory requirement that under the circumstance where one parent lives in the state that issued the original custody determination and the child and other parent no longer have a significant connection with that state and that substantial evidence is no longer available in the state regarding the child's care, protection, training and personal relationships, the courts of that state cannot exercise subject matter jurisdiction over custody issues. The Court noted the child was taken by his mother to California when he was two years old and that while the father exercised visitation in both California and Tennessee, the visitation primarily took place in California and that visitation had been suspended during the custody modification proceedings before the trial court ruled that it no longer had jurisdiction. The

record did not contain any other evidence of any current connection between the child and Tennessee other than that his father lives in Tennessee and the child visited in the state. The Court then considered whether substantial evidence concerning the child's care, protection, training, and personal relationships was no longer available in this state" as follows:

> Once a court has established a custody or parenting arrangement, including a visitation or residential schedule for the non-custodial parent, that order can only be changed or modified if the court determines (1) there has been a material change in circumstances since the initial custody order and (2) that modification of the existing arrangement is in the child's best interests. *Cranston v. Combs,* 106 S.W.3d 641, 643-44 (Tenn .2003); *Kendrick v. Shoemake,* 90 S.W.3d 566, 570 (Tenn. 2002). These determinations, of course, must be based upon evidence adduced at a hearing where both parties have the opportunity to present evidence and challenge the other party's evidence. There can be no question that virtually all of the evidence related to William's current situation, and therefore relevant to a determination of his best interests, will be provided by witnesses and records in California.

*Lee* at * 5.

The *Lee* Court concluded that the trial court no longer had continuing exclusive jurisdiction over custody issues related to the child. The Court then referenced subsection (b) of Tenn. Code Ann. § 36-6-217 which states that: "A court of this state which has made a child-custody determination and does not have exclusive, continuing jurisdiction under this section may modify that determination only if it has jurisdiction to make an initial determination under § 36-6-216." In other words, if trial court does not have exclusive, continuing jurisdiction to modify the custody issue under section 36-6-217, it cannot modify custody unless it has jurisdiction under the provision that allows the court jurisdiction to make an initial custody determination. Tenn. Code Ann. 36-6-216 provides:

> (a) Except as otherwise provided in § 36-6-219, a court of this state has jurisdiction to make an initial child custody determination only if:

> (1) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

> (2) A court of another state does not have jurisdiction under subdivision (a)(1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under §§ 36-6-221 or 36-6-222, and:

(A) The child and the child's parents, or the child and at least one (1) parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and

(B) Substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) All courts having jurisdiction under subdivision (a)(1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under §§ 36-6-221 or 36-6-222; or

(4) No court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (2), or (3).

*Lee* at * 6.

The *Lee* Court applied the facts to the provisions of Tenn. Code Ann. § 36-6-216 and concluded the trial court did not have jurisdiction to decide the custody modification petition under that statute because: (1) at the time the custody modification petition was filed, Tennessee was clearly not the child's home state; (2) there was no indication in the record that a California court had declined jurisdiction; (3) under the California version of the UCCJEA a California court would have jurisdiction. [7] Based on its analysis under Tenn. Code Ann. § 36-6-216 and § 36-6-217 the court held that the courts of Tennessee no longer had jurisdiction to decided the custody modification petition. *Lee* at *6.

In the instant case, as in *Lee*, the only connection the children have with Tennessee is that their father lives there and they visit with him during holidays and summers. Moreover, all the evidence regarding the father's allegation that the mother's problems with her husband, Jason Lewis, and their divorce proceeding created a material change in circumstances for the children and that a modification of custody would be in their best interest originated in Florida. The principal evidence given by the father as to the "chaotic, dysfunctional and argumentative" Florida home environment came from the mother's estranged husband, and all of the events relied upon took place in Florida. The videotape and testimony from a private investigator regarding an extramarital affair the father alleged the mother had engaged in was exclusively related to Florida. Additionally, the witnesses, such as teachers, coaches, ministers, doctors, neighbors and family members, best qualified to testify and present other evidence regarding the children's well-being, protection, training and personal relationships are all located in Florida,. The evidence establishes that the courts of Tennessee no longer have continuing exclusive jurisdiction over custody issues regarding these children. Tenn.

---

[7] The Court had already concluded subsections the facts pertaining to 2(A) and 2(B) were not present under its analysis of Tenn. Code Ann. § 36-6-217.

Code Ann. § 36-6-217(a)(1), .

The next level of inquiry is whether the courts of Tennessee can exercise jurisdiction over the petition to modify custody under Tenn. Code Ann. § 36-6-216 as provided in subsection (b) of Tenn. Code Ann. § 36-6-217. Tenn. Code Ann. § 36-6-216 (a) provides that a Tennessee court has jurisdiction to make an initial custody determinations under the following circumstances. (1) Tennessee is the home state of the child. Here Tennessee is clearly not the home state of the children and Florida is. (2) A court of another state does not have jurisdiction under subsection (a)(1) or a court of the child's home state has declined jurisdiction and the child and one parent have a significant connection with this state other than mere physical presence and there is substantial evidence available in this state concerning the child's care, protection, training, and personal relationships. (3) All states having jurisdiction under the provisions of subsection (a)(1) and (a)(2) have declined to exercise jurisdiction and (4) no court of any other state would have jurisdiction under the criteria in subdivisions (a)(1),(2) or (3). As Florida is now the home state of the children, it could exercise jurisdiction and there is no evidence that a Florida court or the courts of any other states have declined jurisdiction. Thus Tennessee does not have subject matter jurisdiction to modify the custody determination under Tenn. Code Ann. § 36-6-216.

The Trial Court was without subject matter jurisdiction and its Judgment is void and the Trial Court's decision is reversed.

The cost of the appeal is assessed to the father, Christopher Scott Graham.

_____
HERSCHEL PICKENS FRANKS, P.J.